Duvall, Justice,
 

 delivered the opinion of the court, and after stating the facts, proceeded as follows : — In the argument of this cause, it was contended by the attorney-general, that touching at Falmouth, with the intention to get freight there, and coming from that port to a port in the United States, brought the Frances and Eliza within the operation of the navigation act; it being the policy of the law to prevent all communication between vessels of the United States and British ports, which were closed against them. On behalf of the owners, it was contended, that if the Frances and Eliza was bound to Falmouth, it was a mere alternative destination, depending on her being able to get freight there ; and that as she in fact embraced the other branch of the alternative, and went to New Orleans, this must be considered as her original destination.
 

 ^ tbe destination of the Frances and Eliza *from Margaritta to New Orleans, was real, not colorable; and if the touching at Fal-mouth was for the purpose of procuring provisions, of which the ship’s crew was really in want, there was not a violation of the navigation act. The evidence in the cause seems to justify the conclusion, that her real destination was to New Orleans. The order of Mr. Gold, agent of the owners, to the master, to take command of the.vessel and proceed to New Orleans, and there to endeavor to procure a freight to England or the continent ; the letter of recommendation from John Guya, merchant, to Messrs. R. D. Shepherd & Co., requesting their aid to the master to accomplish that purpose, taken in connection with the circumstance of Glover’s taking his passage in the vessel, with the leave of the agent, from Margaritta to New Orleans, establish the fact in a satisfactory manner. It appears to have been understood, by all who had any concern with the vessel, that her destination was to New Orleans.
 

 The Frances and Eliza did not enter the port of Falmouth, but stood off and on, four or five miles from the harbor, for a few days, during which time the master went on shore to get provisions, of which he was in want. Whether he endeavored to procure freight there, is a fact not ascertained by
 
 *179
 
 the testimony. It is certain, that be did not obtain it, because it is admitted, that the vessel sailed in ballast to New Orleans. His real object in going on shore at Falmouth, appears to have been to procure provisions, of which the ship’s crew were much in want. And there is no ’“evidence of any act done by him, which can be construed into a breach of the act concerning navigation. The policy of that act, without doubt, was to counteract the British colonial system of navigation; to prevent British vessels from bringing British goods from the islands, in exclusion of vessels of the United States, and to place the vessels of the United States on a footing of reciprocity with British vessels. The system of equality was what was aimed at. The landing a passenger there, who casually got employment, and for that reason.chose to remain on the island; and the taking in two passengers there, on of which was a boy and a relative, and the other taken, passage free, to New Orleans, are not deemed to be acts in contravention of the true construction of the navigation act.
 

 The log-book was supposed to furnish some suspicious appearances, but, on examination, was found to contain no material fact which could govern in the decision. It is the unanimous opinion of the court, that the sentence of the district court ought to be reversed, and that the property be restored to the claimant.
 

 Decree reversed.