THE PEOPLE *ex rel.* William H. Bussey

*v.*

FRANK J. GAULTER, Clerk of the Circuit Court of Cook County.

*Filed at Ottawa January 16, 1894.*

1. FEES AND SALARIES—*constitutionality of act relating to.* The act of 1893, amendatory of section 33 of the act concerning fees and salaries, as construed by this court, and which requires the payment of ten dollars, to be taxed as costs, to the clerk of a court of record by a party bringing suit, instead of six dollars, as it was before, is a valid and constitutional law.

2. The act of 1893, increasing the amount of costs to be paid to clerks of courts of record, does not violate the provision of the constitution which prohibits any increase in the fees, salary or compensation of certain officers during their terms of office, as such officers' fees are not thereby increased.

3. SAME—*of county officers in excess of their salaries are to be paid into the county treasury.* By section 9 of article 10 of the constitution of 1870 all the fees, perquisites and emoluments of the clerks of courts of record in Cook county above $5000, the amount of their salaries, are required to be paid into the county treasury, and any increase in taxable costs will not in any manner increase the salaries of such clerks.

4. CONSTITUTIONAL LAW—*doubts solved in favor of validity of statute.* Courts ought not to declare an act of the legislature invalid unless it is in plain and obvious conflict with the constitution. When there is a reasonable doubt of the validity of a statute, such doubt should be solved in favor of the legislative action, so as to sustain the statute. The courts should so construe a law as will make it valid.

5. STATUTES—*rule of construction.* Where the meaning of a statute is doubtful, a court will endeavor to ascertain the intention of the legislature in framing it; and this intention may be ascertained by considering the whole act, and construing one part by another, and one clause with reference to its connection with other clauses.

6. A thing within the intention is within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention; and when a particular construction will lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the legislature to avoid such conclusion.

7. In seeking to discover the legislative intent, every feature of the act from which aid can be derived will be looked at, and in such

case the title of the act claims a degree of notice and will have its due share of consideration.

8. Same—*act of 1893, relating to fees and salaries.* The act of 1893, amendatory of section 33 of the act concerning fees and salaries, was intended to apply to counties of the third class, and the words "seventy thousand" are not within the statute because not within the intention, and were inserted by mistake for the words "one hundred thousand." This construction harmonizes sections 13 and 33, and the title and body of the latter section, and gives effect to what appears, from a view of the whole act concerning fees and salaries, and all its parts, to have been the intention of the legislature.

This was a petition filed in this court to test the validity of the act of 1893, relating to fees and salaries. The facts appear in the opinion of the court.

Mr. James E. Peterson, for the relator:

The clerk of the circuit court is a county and a municipal officer. *Jimison* v. *Adams County*, 130 Ill. 564; *Cook County* v. *Sennott*, 136 id. 314.

The fees, salary or compensation of a municipal officer can not be changed during his term of office. Const. 1870, sec. 11, art. 9.

The act of the General Assembly concerning fees, approved June 26, 1893, in force July 1, 1893, increasing the fees of the clerks of courts of record of Cook county, is special legislation, and changes the classification of counties into five classes, and is unconstitutional, and therefore void, and should not be enforced. *Bank* v. *Cheney*, 94 Ill. 430; Const. 1870, secs. 11, 12, art. 10; sec. 22, art. 4.

*Mandamus* is the proper proceeding to compel the circuit clerk to issue a writ of summons. *People* v. *Meech*, 101 Ill. 200; *McArthur* v. *Artz*, 129 id. 352.

Mr. James Maher, for the respondent:

The provisions of the constitution relate solely to the changing of the salaries of officers, and have no application to laws

fixing the costs and fees required of suitors. *Briscoe* v. *Clark County*, 95 Ill. 309 ; *Daggett* v. *Ford County*, 99 id. 334.

Mr. Justice Magruder delivered the opinion of the Court :

This is a petition for *mandamus* filed by the relator, William H. Bussey against the respondent, Frank J. Gaulter, clerk of the Circuit Court of Cook County, to compel the latter to issue a summons in a suit brought by the relator against the Chicago and North Western Railway Company. The petition alleges, that relator tendered to the respondent the sum of six dollars ($6.00), alleged to be the amount of his legal fees, and demanded of him that he issue said summons, but that he refused to do so. The answer avers, that respondent was elected to the office of clerk of the Circuit Court of Cook County, and entered upon the duties thereof on December 5, 1892, and that, on September 5, 1893, when relator tendered said sum of six dollars and demanded the issuance of the summons, the law required a party commencing a suit in said county to pay the sum of ten dollars ($10.00), and that it was the duty of the respondent to require the payment of said sum of ten dollars, which the relator refused to pay.

The object of this proceeding is to test the validity of an Act of the Legislature of Illinois, which was approved June 26, 1893, and went into force July 1, 1893, entitled "An Act to amend section 33 of an act entitled 'An act concerning fees and salaries and to classify the several counties of this State with reference thereto,' approved March 29, 1872; in force July 1, 1872; title as amended by act approved March 28, 1874; in force July 1, 1874; as amended by act approved May 21, 1877 ; in force July 1, 1877." (Laws of Ill. 1893, page 104).

Said section 33, as amended by the Act of 1893, provides that "at the time of the commencement of every suit at law or in equity in any court of record in counties having a pop-

ulation exceeding seventy thousand inhabitants, in this State, the party or parties commencing such suit  *  *  *  shall pay to the clerk of the court the sum of ten dollars, to be taxed as costs in the suit, which said sum shall be in full payment for all services of such clerk on behalf of the plaintiff or plaintiffs, complainant or complainants,  *  *  *  in the progress of such suit from the commencement to the final termination thereof, except the making of copies of papers or orders, a complete record, or a record for a higher court." The provision thus quoted is exactly the same as it was in the original Act of 1872, and in that Act as amended in 1874 and again in 1877, except that the sum mentioned in the latter Act was six dollars. The change made by the Act of 1893 is in requiring a payment of ten dollars instead of six dollars.

*First,* it is contended that the Act of 1893, by thus increasing the amount of costs to be paid to clerks of courts of record, violates those provisions of the constitution, which prohibit any increase in the fees, salary or compensation of certain officers during their terms of office. As the present respondent is clerk of the Circuit Court of Cook County, his salary is fixed by law, and hence is not affected by an increase in the amount of costs to be paid by suitors. Section 9 of article 10 of the constitution of 1870 provides, that "The clerks of all the courts of record, the treasurer, sheriff, coroner and recorder of deeds of Cook county, shall receive as their only compensation for their services, salaries to be fixed by law, which shall in no case be as much as the lawful compensation of a judge of the circuit court of said county, and shall be paid, respectively, only out of the fees of the office actually collected. All fees, perquisites and emoluments (above the amount of said salaries) shall be paid into the county treasury." It has been held, that this section 9 has application to Cook County only. (*Jennings* v. *Fayette County,* 97 Ill. 419 ; *Wulff* v. *Aldrich,* 124 id. 591). In pursuance of this constitutional requirement, the legislature, in section 31 of said Act

of 1872, fixed the salary of the clerk of the Circuit Court of Cook County at $3000.00 per annum. (1 Starr & Cur. Ann. Stat. page 1134). In 1887 section 31 was amended, and the salary of said clerk was fixed at $5000.00 per annum. (Laws of Ill. 1887, page 185; 3 Starr & Cur. Ann. Stat. pages 621, 622).

When respondent entered upon the duties of his office on December 5, 1892, his salary, as thus fixed by the Act of 1887, was $5000.00 per annum. This salary was not in any way increased by the Act of 1893. By the terms of said section 9, all the fees, perquisites and emoluments of the clerks of courts of record in Cook County, above the amounts of their salaries, are required to be paid into the county treasury. The increased amount of costs received by the clerk of the Circuit Court of Cook County under the Act of 1893, after deducting his salary of $5000.00, belongs to the county, and not to the clerk. The object of the constitutional prohibition is to prevent an increase in the compensation actually received by the officer; and, in the present case, that compensation remained the same, although each suitor, on beginning his suit, was required to pay $10.00 instead of $6.00. It is true, that the salary of the officer is to be paid "only out of the fees of the office actually collected;" and, if the fees collected were insufficient to pay the salary, there might be a temptation to the officer to obtain from the legislature an increase of fees or costs. But such increase could in no event affect the amount of his salary, as fixed by law, for the term then held by him; and the evil aimed at by the constitution is not the obtaining of a compensation already fixed, but the addition thereto of an amount not theretofore allowed. We do not think that the Act is unconstitutional as providing for an increased compensation.

*Second,* it is claimed, that the Act of 1893 is unconstitutional upon the alleged ground, that it changes the classification of counties into a larger number of classes than is

authorized by the constitution for the purpose of regulating fees according to class. This branch of the case has given us considerable trouble, and we have not been favored with any argument upon it by the counsel for the respondent, his brief being directed only to the first ground upon which the constitutionality of the Act is attacked. We have concluded, however, to sustain the Act, as against the second objection made to its validity, for the reasons hereinafter stated.

Section 11 of article 10 of the constitution provides, that "the fees of township officers, and of each class of county officers, shall be uniform in the class of counties to which they respectively belong.". Section 12 of said article 10 provides, that "the general assembly shall, by general law, uniform in its operation, provide for and regulate the fees of said officers" (that is, State, County and township officers) "and their successors, so as to reduce the same to a reasonable compensation for services actually rendered. But the General Assembly may, by general law, classify the counties by population into not more than three classes, and regulate the fees according to class." Accordingly, by section 13 of said Act of 1872, for the purpose of fixing the fees and compensation of county and township officers, the several counties in the State were divided into three classes, according to population as ascertained by the federal census of 1870, known as the first, second and third classes, the first, embracing counties containing a population of not exceeding 20,000 inhabitants; the second, embracing counties containing a population over 20,000 and not exceeding 70,000; the third, embracing counties containing a population exceeding 70,000. (Hurd's Rev. Stat. of 1874, page 503). Then follow provisions fixing the fees of officers in the first and second classes, and of other officers, until we come to said section 33 above referred to. This section, as it appears in the Revised Statutes of 1874, is prefaced by these words: "Fees and compensation of clerks of courts of record, except in probate matters, in counties of the third class;"

and the section then proceeds to declare, that "at the time of the commencement of every suit * * * in any court of record, in counties having a population exceeding 70,000 inhabitants, * * * the party * * * commencing such suit * * * shall pay to the clerk of the court the sum of six dollars," etc.

It will be noticed, that section 33 does not say: "in counties of the third class," but it says: "in counties having a population exceeding 70,000 inhabitants." (Hurd's Rev. Stat. of 1874, page 515). But inasmuch as said section 13 had classified counties into three classes, and the third class consisted of "counties containing a population exceeding seventy thousand inhabitants," the two expressions, "counties of the third class," and "counties having a population exceeding 70,000 inhabitants," meant the same thing; and suitors were to pay six dollars in counties of the third class. Hence, the Act of 1872, including said sections 13 and 33, was an exercise by the legislature of its constitutional power "to classify counties by population, and to regulate, by general law, fees and salaries of certain local officers, according to class." (*Devine* v. *Com'rs of Cook Co.* 84 Ill. 590; *Worcester Nat. Bank* v. *Cheney,* 94 id. 430). Said section 33 established a uniform fee of $6.00 to be paid to clerks of courts of record in counties of the third class.

But in 1883 the legislature passed an act amending said section 13 by making a new classification of counties into three classes, according to population, as ascertained by the federal census of 1880, the first class consisting of counties containing a population of not exceeding 25,000 inhabitants, the second class, of counties containing a population over 25,000 and not exceeding 100,000, and the third class, of counties containing a population exceeding 100,000. (1 Starr & Cur. Ann. Stat. pages 1121, 1122; Bradw. Law of Ill. 1883, page 83). Section 33, however, was not changed by inserting either the words, "in counties of the third class," or the

words, "in counties having a population exceeding one hundred thousand inhabitants." The words, "in counties having a population exceeding seventy thousand inhabitants," were allowed to remain as they were in the Act of 1872 and in the Revised Statutes of 1874. In other words, section 33 was not amended in 1883, or at any time thereafter so far as we are advised, so as to make it conform to the new classification. fixed by section 13, as amended in 1883.

We have been referred to no new classification made since 1883, according to population, as ascertained by the federal census of 1890, or otherwise, so that, when section 33 was amended in 1893 by increasing the costs to be paid from $6.00 to $10.00, the classification, fixed in 1883, was still in force, as the legal classification of counties for the purpose of regulating the fees of county and township officers. But the Act of 1893, amending said section 33, still retained the words: "in counties having a population exceeding seventy thousand inhabitants," not substituting for these words the words: "in counties having a population exceeding one hundred thousand inhabitants," or the words, "in counties of the third class," so as to conform to the existing classification fixed in 1883.

If, therefore, section 33, as amended by the Act of 1893, be considered solely with reference to the language contained in the first sentence of it, and without reference to other language indicating a contrary intention of the legislature, it adds one, if not two classes, to the three classes designated. by the Act of 1883; and, if it does so, there is a violation of said section 12 of article 10 of the constitution, which limits the power of classification "by population into not more than three classes." That is to say, the first clause of said section 33, considered by itself, adds a new class of counties having a population exceeding 70,000 to the three classes, the first of which contains not over 25,000, the second of which contains over 25,000 and not exceeding 100,000, and the third of which contains over 100,000 inhabitants; and, impliedly, it.

would seem also to add still another class having a population between 25,000 and 70,000.

Courts ought not to declare an act of the legislature invalid, unless it is in plain and obvious conflict with the constitution. Where there is a reasonable doubt of the validity of a statute, such doubt should be solved in favor of the legislative action, so as to sustain the statute. The presumptions are in favor of the constitutionality of a law passed by the legislature, and the courts will, if possible, give it such a construction as will enable it to have effect. (*Lane* v. *Dorman,* 3 Scam. 238; *Newland* v. *Marsh,* 19 Ill. 376; Cooley's Cons. Lim.—6th ed.— pages 216-218.)

Where the meaning of a statute is doubtful, a court will endeavor to ascertain the intention of the legislature in framing it. · This intention may be ascertained by considering the whole act, and construing one part by another, and one clause with reference to its connection with other clauses. (Sedgwick on Stat. Law, pages 231 and 243; Sutherland on Stat. Cons. secs. 219, 234, 239). Statutes are not always interpreted according to the letter, but according to the intent and meaning. A thing within the intention is within the statute, though not within the letter; and a thing within the letter is not within the statute, unless within the intention. Where a particular construction will lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the legislature to avoid such conclusion. In seeking to discover the legislative intent, every feature of the Act, from which aid can be derived, will be looked at; and in such case . the title of the act claims a degree of notice, and will have its due share of consideration. *Perry County* v. *Jefferson County,* 94 Ill. 214.

When section 33 was amended in 1893, it was a part of the same general Act in regard to fees and salaries and the classification of counties, of which said section 13 as amended in 1883 was a part. The former section must therefore be

construed with reference to its connection with the latter. As section 13 divided counties into the constitutional number of three classes, and put into the second class counties containing over 25,000 and not exceeding 100,000 inhabitants, and into the third class counties containing over 100,000 inhabitants, it will not be presumed, that the legislature intended to disturb this classification by the unconstitutional act of adding a class of counties containing a population exceeding 70,000. The two sections will be so construed, if possible, as to make them harmonize with each other. Section 13 closes with these words : "The fees and compensation of the several officers hereinafter named shall be as follows, in the respective classes of the counties to which they belong :" (1 Starr & Cur. Ann. Stat. page 1122). These words apply and extend to section 33, which has the prefatory title already referred to : to-wit : "Fees and compensation of clerks of courts of record, except in probate matters, in counties of the third class." This title, which is inserted between sections 32 and 33, is a part of the Act, and plainly indicates that section 33 was intended to provide for the fees of clerks "in counties of the third class," as fixed by the preceding section 13. The Act of 1893 did not change or do away with this title thus given to section 33. What were counties of the third class as fixed by section 13? They were counties containing a population exceeding 100,000, and not counties having a population exceeding 70,000. Hence, there is a conflict between the title preceding section 33 and the words of the first clause of that section, the one, designating counties of the third class having a population exceeding 100,000, and the other, designating counties having a population exceeding 70,000. The title should have its due share of consideration in determining the intention of the legislature, and clearly shows, when taken in connection with the clause hereinafter referred to, that the legislature made a mistake, when it passed the amendment of 1893, in not substituting the words,

"one hundred," for and in the place of the word, "seventy," so that the first clause in the section should have read: "in counties having a population exceeding one hundred thousand inhabitants." The correctness of this conclusion is still further apparent from a subsequent provision in section 33 as amended in 1893, which begins as follows: "Clerks of courts of record in this State, *in counties of the third class,* shall be allowed *further* fees as follows:" The word, *"further,"* evidently means: in addition to the $10.00 and other fees previously spoken of; showing that "counties of the third class" and "counties having a population exceeding seventy thousand inhabitants" were *intended* to be designations of the same class.

It is manifest, that the thing within the letter, to-wit: "seventy thousand," is not within the statute, because not within the intention, while the thing within the intention, to-wit: "one hundred thousand," is within the statute, though not within the letter. This construction harmonizes sections 13 and 33 and the title and body of the latter section, and gives effect to what appears, from a view of the whole act concerning fees and salaries, and all its parts, to have been the intention of the legislature. The same mistake made in 1893 was made in 1883, when section 13 was amended, in not then changing the language of section 33 to make it conform to the classification fixed by section 13; and the same observations here made in regard to section 33, as amended in 1893, apply to that section as it stood during the ten years from 1883 to 1893.

It follows, from the considerations thus presented, that the prayer of the petition for a writ of mandamus must be denied.

*Writ denied.*