E. T. GLENNON, Justice of the Peace,

*v.*

R. S. BRITTON.

*Filed at Ottawa April 1, 1895.*

1. APPEALS AND ERRORS—*an actual party, though not a proper one, may appeal.* A justice of the peace, made a party to the record, by name, in *certiorari* proceedings, may prosecute an appeal, although he may not have been a proper party.

2. SAME—*objection that remedy was appeal instead of certiorari, must be made at trial.* The objection that the remedy was appeal, instead of *certiorari*, is not available on a further appeal to a party who raised no such question in the trial court, and who stipulated that the cause should be submitted below upon briefs to be filed upon the merits.

3. CONSTITUTIONAL LAW—*division 8 of the Criminal Code, authorizing search warrants, is constitutional.* The provisions of the Criminal Code (div. 8) for warrants to search for stolen property, gaming implements and other articles illegally kept, are not unconstitutional, as working deprivation of property without due process of law, as they require that such property, and the persons in whose possession it is found, shall be brought before the justice.

4. SAME—*when property may become liable to seizure.* Articles customarily regarded as property when lawfully acquired and used for a lawful purpose, may, by statutory enactment, cease to be so treated, and become liable to seizure, forfeiture or destruction, if they or their use is deemed pernicious or dangerous to the public welfare.

5. SEARCH—*when warrant for search and seizure may issue.* A warrant may be issued for the search and seizure of property deemed by statute pernicious or dangerous to the public welfare, and whose wrongful use is surreptitious, or so concealed that discovery cannot be had by ordinary process or diligence, where the proper officers are apprised that the law has been violated.

6. SAME—*searches and seizures of gaming implements are not unreasonable.* Searches and seizures as to property and things deemed pernicious to the public welfare, such as gaming implements, are not within the inhibition of Federal and State constitutions, which guarantee the citizen immunity against *unreasonable* searches and seizures.

APPEAL from the Circuit Court of Cook county; the Hon. S. P. McCONNELL, Judge, presiding.

This was a proceeding in the circuit court of Cook county, upon the verified petition of R. S. Britton, appellee, praying the issuance of a writ of *certiorari,* as at common law, to bring before said court, for the purpose of determining the legality thereof, certain proceedings under division 8 of the Criminal Code, had before E. T. Glennon, a justice of the peace of the town of South Chicago. The writ was awarded, and the case came on for final hearing upon the petition, and the return of the justice to the writ. The court found and adjudged, from said return, that the record and proceedings brought before it in the said cause before the justice were illegal and void, and entered an order vacating and setting the same aside. To reverse this judgment the said justice of the peace prosecutes an appeal to this court.

It was represented by the petition for the writ that the said R. S. Britton was the owner of two large tables, of the value of $100, which had been kept in premises known as 2700 State street, in the city of Chicago; that on December 11, 1891, one Benjamin Williams, for the purpose of procuring a search warrant for certain gaming apparatus and implements, made written complaint, under oath, before E. T. Glennon, a justice of the peace in and for the town of South Chicago, that the premises aforesaid were resorted to for the purposes of unlawful gaming, and that there were concealed in the rooms, closets, vaults and safes therein, gaming apparatus, and implements used, kept and provided to be used in unlawful gaming, to-wit, one faro table, one roulette table and wheel, poker tables, chips, cards and other gambling implements and devices, and that the premises were occupied by persons unknown; that thereupon said Glennon, as justice of the peace, and D. J. Lyon, also a justice of the peace, issued a search warrant, under their hands and seals, directed to the sheriff or any policeman or constable of the county, reciting the facts contained in the complaint, and commanding them, with necessary

and proper assistance, in the day or night time, to enter said premises and there diligently search for said gaming apparatus and implements, and if the same, or any part thereof, be found upon such search, that they bring the apparatus or implements so found before the justice, Glennon, to be disposed of according to law. The petition further represented that the warrant, when issued, was delivered to one M. T. Lawler, a police officer of the city of Chicago, who, on the night of said date, went to said premises with divers other police officers unknown to petitioner, and, acting under and by virtue of said warrant, took and carried away said tables, and made return upon said warrant as follows: "Executed this writ by searching the within mentioned premises, and two crap tables found;" that said officer took the said tables before E. T. Glennon, justice, as aforesaid; that no summons or other writ has been served upon petitioner referring to any trial or proceedings relating to said property, and that he had no notice whatever of any legal proceedings in relation thereto; that upon said tables being taken before the said Glennon, justice, etc., he found and adjudged the property so before him, seized upon said search warrant, to be gambling implements, and ordered the same destroyed; that said proceedings are oppressive and unwarranted by law, and the justice is proceeding illegally and without jurisdiction, and in violation of the constitutions of the United States and of this State; that the law under which said search warrant was issued and said proceedings were had does not provide for any trial, or any opportunity for petitioner to be heard before the entering of an order by said justice to burn or otherwise destroy said property, and that petitioner cannot appeal from such order, and is wholly without remedy to set aside and annul the said proceedings, save by the allowance of a writ of *certiorari* as at common law, directing and commanding a record of the proceedings in that behalf be brought before said circuit

court, and praying the issuance of said writ of *certiorari* accordingly, and that the proceedings before the justice be set aside, etc.

It appears from the return of the justice to the writ, that the complaint, search warrant and return were in all respects as stated in the petition, and that the proceedings before him were entitled, *"The People of the State of Illinois* v. *No. 2700 State St.,"* and the transcript being as follows :

"On written complaint, under oath, by Benjamin Williams, warrant issued to police officer M. T. Lawler, returnable forthwith.

"Returned served by searching said premises, and bringing into court the following articles : two crap tables.  On December 12, 1891, case called at 10 A. M., and continued to December 14, 3 P. M., to be heard at 132 S. Clark St.

"Case called for trial December 14, 3 P. M., 1891. . The plaintiff and property present in court.  Evidence being heard, the court found and adjudged the property seized on search warrant to be gambling implements, and ordered them destroyed."

JOHN S. MILLER, and CHARLES B. OBERMEYER, for appellant.

EDWARD H. MORRIS, for appellee :

*Certiorari* as at common law is the proper way to set aside the action of inferior tribunals in cases where they have proceeded without jurisdiction, or otherwise proceeded in violation of law.  *Commissioners* v. *Supervisor,* 27 Ill. 140 ; *People* v. *Wilkinson,* 13 id. 660 ; *Hyslop* v. *Finch,* 99 id. 171.

The rule is the same whether the proceedings before the inferior court be civil or criminal.  *Dean* v. *State,* 63 Ala. 153 ; *Memler* v. *State,* 75 Ga. 576 ; *Ex parte Lange,* 18 Wall. 163.

Appellant contends that *certiorari* will not lie, because it was within the power of appellee to have appealed from appellant's order, as justice of the peace, in the case of *People* v. *75 Custom House Place*, and in support of his position cites section 62 of chapter 79 of the Revised Statutes. The above section applies only to civil cases and actions of debt for penalties, and gives no right of appeal in criminal cases. *Town of Partridge* v. *Snyder*, 78 Ill. 519; *Edwards* v. *Vandermack*, 13 id. 633; *Ward* v. *People*, 13 id. 635.

The law which gives the right of appeal from a justice's judgment in a criminal case, is division 9, chapter 38, section 449, of the Criminal Code, which clearly limits the right to appeal in criminal cases to the defendant. Appellee was not the defendant. His only remedy was by common law *certiorari*, as the case was a criminal one. Proceedings under the Search Warrant act to confiscate property are criminal prosecutions. *State* v. *Snow*, 3 R. I. 64.

The Search Warrant act, in so far as it applies to the destruction of alleged gaming implements, is unconstitutional. "Nor shall any State deprive any person of life, liberty or property without due process of law." (14th amendment U. S. Const. sec. 1.) "No person shall be deprived of life, liberty or property without due process of law." Ill. Const. art. 2, sec. 2; *Wilburn* v. *McCalley*, 63 Ala. 436; Cooley's Const. Lim. 371.

A statute which permits or authorizes the destruction of articles seized upon a search warrant, and does not provide for notice to the owner and an opportunity to be heard, is unconstitutional. *Lowry* v. *Rainwater*, 70 Mo. 152; *Fisher* v. *McGirr*, 1 Gray, 1; *Green* v. *Briggs*, 1 Curtis, 311; *Hibbard* v. *People*, 4 Mich. 126; *Hey Sing Jeck* v. *Anderson*, 57 Cal. 251; *State* v. *Snow*, 3 R. I. 64; *Baldwin* v. *Smith*, 82 Ill. 163; *Earp* v. *Lee*, 71 id. 193.

It is not enough that the owners may by chance have notice, or that they may, as a matter of favor, have a

hearing. *Stuart* v. *Palmer*, 74 N. Y. 183; *Kuntz* v. *Sumption*, 117 Ind. 1.

"In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation, ·* * * and a speedy public trial by an impartial jury." Const. art. 2, sec. 9.

The proceedings to confiscate and have destroyed appellee's property were criminal proceedings. This is the law whether the proceedings be *in rem* or *in personam*. *Boyd* v. *United States*, 116 U. S. 616; *State* v. *Snow*, *supra*.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

In this case a common law writ of *certiorari* was directed to appellant, a justice of the peace in and for the town of South Chicago, commanding him to certify and bring into the circuit court of Cook county the record of the proceedings in and about a search warrant which was issued by him in respect of premises known as 2700 State street, in the city of Chicago, upon a complaint made under division 8 of the Criminal Code, and to do and receive what the court should order in connection therewith, etc.

The office of the common law writ of *certiorari* is to bring before the court the proceedings of inferior tribunals or officers acting judicially, in cases where they exceed their jurisdiction or where they proceed illegally, and there is no appeal or other mode provided for directly reviewing their proceedings, (*Miller* v. *School Trustees*, 88 Ill. 26; *Lees* v. *Drainage Comrs.* 125 id. 47, and cases cited;) and the case is tried and determined upon the record alone, no evidence outside of it being admissible. (Ibid.) It would seem that the justice of the peace, after complying with the mandate of the writ, by certifying and producing to the circuit court the proceedings had before him, would have no interest in the

subject matter, and nothing more to do in connection therewith, except to obey and carry out the further order of the court.   But whatever the effect of this may be in legal contemplation, in so far as it may affect the question of his being a competent party to take this appeal, it suffices that the proceedings in the circuit court were entitled and conducted in the name and style of "R. S. Britton, plaintiff, *v.* E. T. Glennon, Justice of the Peace, etc., defendant," and the judgment is so entered.   The rule appears to be well settled that an appeal must be perfected or a writ of error sued out by and in the names in which the proceedings below were ꞌconducted, and in none other, (*Robinson* v. *Magarity*, 28 Ill. 423; *Railroad Co.* v. *Surwald*, 150 id. 394, and 147 id. 194;) and that an appeal by a person not a party to the record is unauthorized and void.   (*Rorke* v. *Goldstein*, 86 Ill. 568; *Hesing* v. *Attorney General*, 104 id. 292; *Railroad Co.* v. *Surwald*, 147 id. 194.)   The appeal to this court having been taken by the justice of the peace, a party to the record by name, the objection that he was not so far a party as to be entitled to prosecute the appeal is not well founded.

It is insisted by counsel that the common law writ of *certiorari* ought not to have been issued by the circuit court, for the reason that the petitioner had a remedy by appeal.   When the petition was filed and the *certiorari* applied for, the twenty days allowed by law for taking an appeal from the judgment of a justice of the peace had not expired, and if the petitioner had a remedy by appeal, it is manifest that he was not entitled to the common law writ.   (Authorities *supra.*)   This question was not raised, however, in the court below.   It does not appear, from the record, that any motion was made to quash or dismiss the writ, as having been improvidently issued, nor, indeed, was the propriety of the proceedings in any way questioned in that court.   Moreover, the parties, by counsel, appeared, and by stipulation, in writing, the cause was to be submitted upon printed briefs to be

thereafter filed, and upon such stipulation and submission the case was taken under advisement by the trial court, and subsequently decided. The effect of the stipulation, which was practically a submission of the case upon the merits, was to withdraw from the attention of the trial court the question now insisted upon, and the rule is familiar that a party will not be permitted, in a court of review, to insist upon error committed at his own instance, contrary to his express stipulation, upon which the lower court was induced to act. (*Chicago and Northwestern Railway Co.* v. *West Chicago Park Comrs.* 151 Ill. 204.) If the adverse party has mistaken his remedy, advantage can only be taken of that fact in the usual mode, and by preserving and assigning the same for error upon the record. That the circuit court had jurisdiction to grant the writ is unquestionable. In *People* v. *Wilkinson,* 13 Ill. 660, it was said to be "unnecessary to multiply cases upon the authority of the court to issue this writ. It is a common law power, and is vested in our circuit courts,—which, in this State, are the highest courts of original jurisdiction, and answer to the court of King's Bench in England,—unless it is taken away by statute. There is certainly no express statute which deprives these courts of this jurisdiction, nor is there any which takes it away by implication."

It is therefore manifest that in the *certiorari* proceedings the court had jurisdiction to issue the writ, of the parties and of the subject matter, and the opposite party can not be permitted to submit the cause upon the merits, thereby waiving all questions of regularity, formality or propriety of the proceedings, (*Mitchell* v. *Jacobs,* 17 Ill. 235,) and afterward be heard in this court upon those questions which he should in fairness have brought to the attention of the court below. (*Railroad Co.* v. *Wrixon,* 150 Ill. 532.) It may be that appellee originally had the right to an appeal from the judgment of the justice, and, had the question been properly raised, would have been

remitted to that remedy; but that not having been done, the court below, by its judgment, necessarily found the contrary, and that *certiorari* would lie, ·and appellee, by his failure to object, and stipulation, having acquiesced in the action of that court, can not now be allowed to urge for reversal that which he should have insisted upon at the time,—and this upon the plainest principles of estoppel, too clear to require the citation of authority.

The important question presented upon this record is, whether the proceedings before the justice, prosecuted under division 8 of the Criminal Code, were authorized by law, and valid, and whether the finding and judgment of the circuit court, vacating and setting the same aside, were therefore erroneous. It is insisted that the statutes contained in said division of the Criminal Code relating to search warrants, and under which the justice of the peace proceeded, are in violation of the fourteenth amendment of the constitution of the United States, which provides, "nor shall any State deprive any person of life, liberty or property without due process of law," etc., and of section 2, article 2, of the State constitution, which provides, "no person shall be deprived of life, liberty or property without due process of law," in that said statutes provide for the seizure and destruction of property without notice to the owner, a trial, or any opportunity on the part of one having an interest in the property to be heard, and we are cited to very many of the numerous cases in which these provisions of the organic law have found construction and application. They do not, however, afford a satisfactory solution of the question of the constitutionality of the statutes under consideration, which are similar, if not in all essential particulars identical, with those which have been passed and become the law in very many, if not quite all, of the States of the Union.

It is not true, as seems to be supposed by counsel, that the statutes in question do not provide for or con-

template the service of any notice upon the owner or party in possession preliminary to the condemnation and destruction of the property seized. Section 3 provides for a search in the day time, and that the warrant shall command the officer, among other things, "to bring such stolen property or other things, when found, *and the person in whose possession they are found,* to the judge or justice of the peace who issued the warrant, or to some other judge or justice of the peace or court having cognizance of the case." Section 4 provides for search in the night time, in which case the warrant is to be issued by two judges or justices, and, among other things, shall command the officer "to bring the property or thing described in the warrant or summons, *and the person in whose possession they are found,* before either of the judges or justices who issued the warrant, or some other judge or justice of the peace of the county." Section 7 provides that the property seized under the search warrant, for which search is allowed by the act, "shall be safely kept, by direction of the judge, justice or court, so long as necessary, for the purpose of being produced or used as evidence *on any trial,*" and that, as soon as may be afterward, stolen or embezzled property is to be returned to the owner, and all other things seized by virtue of such warrants to be burned or otherwise destroyed, under the direction of the judge, justice or court. Section 8 provides: "If, *on the hearing,* it appears there was no probable cause for suing out the warrant, the whole cost may be taxed against the complainant," etc.

It is manifest that sections 3 and 4 contemplate that the officer empowered to execute the search warrant shall bring, not only the things described in the warrant and against which the complaint was made, but also the *person* in whose possession they are found, if found, before the judge or justice. Notice of the proceedings, by service of the search warrant and bringing the person in possession of the property before the court, is clearly

intended by the statute, and is doubtless required for the purpose of giving the owner or other person interested an opportunity to claim the property, as well as, perhaps, to ascertain whether the party in possession has committed an offense. In respect of all property mentioned in the act, except that which has been stolen or embezzled, the party in possession is, presumably, for the purposes of the act, the owner, if any one can in law be regarded as having ownership. Certain articles or things customarily regarded as property when lawfully acquired and used for a lawful purpose, may, by proper statutory enactment, cease to be so treated, and become liable to seizure, forfeiture and destruction, if they or their use is deemed pernicious or dangerous to the public welfare. And where the wrongful use of the property is surreptitious, or so concealed that discovery thereof can not be had by ordinary process and diligence, and the proper officers are apprised, in the appropriate mode, that the property is being used in the manner or for the purposes denounced by the statute, and the law therefore violated, a warrant may be issued for the search and seizure of such property. As will be seen later on, statutes for this purpose have generally been held valid enactments.

It is ordinarily the practice everywhere to allow claimants to be heard, (Cooley's Const. Lim. 6th ed. 364, *et seq.*,) and we think this was clearly the intention of the act under consideration. By section 7 the property "shall be safely kept, by direction of the judge, justice or court, so long as necessary, for the purpose of being produced or used as evidence *on any trial.*" It may be a question as to whether the property is being used in the manner or for purposes in violation of law, and this becomes an issue, to be tried and determined according to established procedure; or the person in whose possession the articles are found may be held for the commission of a public offense, in which case the property may be kept,

to be used or produced as evidence upon the trial. It is futher provided by section 8, that "if, *on the hearing,*" it appears that the warrant was issued without probable cause, the complainant may be required to pay the costs. The words "trial" and "hearing," as here used, are familiar terms, and are generally understood as meaning a judicial examination of the issues between the parties, whether of law or of fact. It will be found that, ordinarily, search warrants are required to particularly specify the place to be searched and the thing to be seized. (21 Am. & Eng. Ency. of Law, 959.) But the statute in this State (sec. 6) requires as explicitly that the return of the officer shall specify the property taken, the place where and *the person from whom taken.* If, on the hearing, the property is found not to be of the character, or used, obnoxious to the statute, it may be restored to the person from whom it was taken, and to this end, if no other, the purpose of requiring the officer to so state in his return becomes manifest. The statute provides for notice to the only person who could be considered as owner, if the property is found to be of the class which shall be destroyed. If it is of the obnoxious class which the law condemns, it is very doubtful if it can be deemed the subject of property or any one the owner of it. If, on the other hand, it be harmless and moral, or not of the class to be condemned and destroyed, it can be restored to the party from whom it was taken, and no one be injured by the proceedings. Where, as must be done, it is made *prima facie* to appear to the proper officer that property or things are being used in the manner or for the purposes denounced by the statute, and are concealed in a specified place, can it be said to be incumbent upon the S ate to serve any other or further notice than the bringing of the property and of the person in whose possession found, before the judge or justice? Must the State go out upon an exploring expedition to find the owner, in order to give him a day in court?

Statutes of the character of those in question are enacted upon the theory that the proceedings shall be against the thing or *in rem*, and the State and Federal reports abound in decided cases in which laws of this kind have been held constitutional and valid, where no service was had or contemplated other than that upon or against the offending thing and the person in whose possession it is found. In respect of the major part, if, indeed, not all, of the property of the character described in the act, except that denominated as stolen or embezzled, it would be practically impossible to find the owners, if any. When counterfeit or spurious coin, forged bank notes, and instruments or tools for making the same, are confiscated by public officers, the owners are often unknown, if not in remote and distant parts. Owners of obscene and vulgar books, pamphlets or pictures, who circulate or dispose of their goods secretly and in violation of law, are not readily found and identified with the goods, nor do either they or spurious coin makers hasten to claim rights of property in the things seized. Gambling tables, implements and devices are not usual and customary subjects of property, and if such articles chance to be seized upon by vigilant officers of the law, the owners are more difficult to locate and apprehend. Experience has shown that while the property, materials and paraphernalia may be seized, and the immoral resort or rendezvous thus perhaps broken up, the proprietors, or those who engage in the immoral and nefarious business, are on the alert, and not infrequently evade, if they do not altogether escape, the just penalties of the law. The object of the proceedings to be instituted under the statute is, that the unlawful and immoral practice be stopped, by destroying implements, apparatus, materials, etc., with which it is carried on. The theory is, in respect of such property, that no one is longer the owner of it. The moment it is used and applied in the unlawful business it becomes liable to for-

feiture, and though the claimant may appear and claim it, he has no greater rights in property so used than has any other person. That the business or traffic designated, in which the offensive property is used, is immoral and unlawful, and therefore a public nuisance, can not be questioned, and for the promotion of the general welfare the State, under its police powers, has the undoubted right to adopt the most expeditious, inexpensive and effective mode of abolishing and abating the same. Under the various acts of Congress goods and things are seized, condemned and destroyed without service of process on the owner, other than seizure of the goods and arrest of the person in whose possession they are found, and that such statutes, and proceedings under them, are regarded constitutional and valid has been determined in many adjudicated cases in the Federal courts. (*Beer Co.* v. *Mass.* 97 U. S. 25 ; *Bartemeyer* v. *Iowa,* 18 Wall. 129 ; *United States* v. *Distillery No. 28,* 6 Biss. 384; *Boyd* v. *United States,* 116 U. S. 616; *Stockwell* v. *United States,* 3 Cliff. 284; *Locke* v. *United States,* 7 Cranch. 339 ; "*The Luminary,*" 8 Wheat. 401 ; *Henderson's Distilled Spirits,* 14 Wall. 44, and cases cited.) And it will not be necessary to enter upon an examination of them.

The doctrine is generally understood and stated to be, that where the offense consists of the possession or use of things which are prohibited by law, either because of their injurious effects upon the public or because the goods belong to another, or when there is an unlawful detention of persons, search warrants may be issued for their recovery, when satisfactory evidence of their being stored in a particular house or place is presented to the judicial officer who issues the warrant. And search warrants have accordingly been granted to search for stolen goods ; for counterfeit money, forged bills and notes ; for goods held or smuggled into the country in violation of the revenue laws of the United States ; for implements of gaming or of counterfeiting ; for lottery

tickets or intoxicating liquors kept for sale in violation of law; for obscene books and papers kept for sale or circulation; for gun powder, explosives and dangerous materials so kept as to endanger the public safety; for the recovery of public records and books retained from proper custody; for females supposed to be concealed in houses of ill-fame, children enticed away from parents or guardians, and in aid of sanitary and other police regulations. (Cooley's Const. Lim. 6th ed. 370; Tiedeman on Lim. of Police Power, 462, and cases in notes 2, 3, 4.) And the rule in all such cases generally seems to be, that the warrant must command, not only that the goods or articles to be searched for, if found, but the *party* in whose custody they are found, be brought before the magistrate, "to the end," says Judge Cooley, "that, upon further examination into the facts, the goods and the party in whose custody they were may be disposed of according to law." (Cooley's Const. Lim. 369, and cases in note 4.)

Searches and seizures of the character in the case at bar are not deemed unreasonable, and therefore are not within the inhibition of Federal and State constitutions, which guarantee to the citizen immunity against unreasonable searches and seizures. It was said by Justice BRADLEY in *Boyd* v. *United States*, 116 U. S. 616, that "laws which provide for the search and seizure of articles and things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, implements of gambling, etc., are not within the category of unreasonable searches and seizures. *Commonwealth* v. *Dana*, 2 Metc. (Mass.) 329. Many other things of this character might be enumerated." (See, also, *Langdon* v. *People*, 133 Ill. 382.) The exercise of the power should be properly guarded, and every proper means adopted in order to prevent abuses and infringement upon the rights of the citizen under the constitution. To this end, we think,

the evident purpose and intent of the legislature in requiring that not only the property, but also the person in whose possession it is found, shall be brought before the court, were to acquaint parties who might be interested, with the proceeding, and give opportunity to be heard concerning the disposition that should be ultimately made of the property. The legislature has seen fit to require this form of notice, which they, in their discretion, must have deemed sufficient for the summary purposes and objects of the act, and we do not feel inclined to hold that it is insufficient, or that any other or further notice should be given. It is the duty of this court to hold the statutes under consideration constitutional and valid, if it can consistently and reasonably be done, (*People ex rel.* v. *Gaulter,* 149 Ill. 39, and cases cited,) and in view of this firmly established doctrine we are of opinion that such provision is made by the statute for notice of the proceedings and a hearing of the matters involved, that no one under it will necessarily be deprived of his property without due process of law.

It follows, therefore, that we are also of the opinion that the circuit court erred in holding the statutes in question unconstitutional and void, and the judgment will accordingly be reversed.

*Judgment reversed.*