ROBERT C. GIVINS

*v.*

THE CITY OF CHICAGO.

*Opinion filed June 21, 1900—Rehearing denied October 4, 1900.*

1. PUBLIC IMPROVEMENTS—*effect, in cities of over 25,000, where petition has not sufficient signers.* Under section 7 of the Local Improvement act of 1897, boards of improvement in cities of over 25,000 inhabitants may originate a scheme for local improvement with or without a property owners' petition, and it is immaterial that petitions under which such boards act do not have sufficient signers.

2. SPECIAL ASSESSMENTS—*assessment not invalid because estimate is made before passage of first resolution.* A special assessment is not invalid because the engineer's estimate is made before the board has adopted the first resolution describing the proposed improvement, the only requirement being that such estimate be made a part of the resolution presented at the public hearing.

3. SAME—*ordinance may refer to established datum for fixing grade.* An ordinance fixing grade of street by specifying measurements to be made from the "plane of low water in Lake Michigan of A. D. 1849," is not invalid as referring to a matter *dehors* the ordinance.

4. SAME—*"filling" presumed not required when not mentioned in ordinance or estimate.* It will be presumed that no "filling" will be necessary in bringing a street to grade where neither the ordinance nor the estimate contains any reference thereto.

APPEAL from the County Court of Cook county; the Hon. O. H. GILMORE, Judge, presiding.

This is an appeal from a judgment of the county court, confirming a special assessment levied for the improvement of a system of streets in the north-west part of the city of Chicago, including North Sacramento avenue and other streets. Objections to the entry of judgment against his property were filed by the appellant and overruled by the court. The cause was then submitted to a jury upon the question of benefits, and a verdict was brought in reducing the assessment as to certain property therein named. Motions for new trial and in arrest of judgment were overruled, and judgment of confirmation was entered.

The ordinance provides "that the roadways of said streets be curbed, graded and paved with vitrified brick on six inches of natural cement concrete." On July 6, 1899, the board of local improvements submitted to the city council the ordinance in question, together with an estimate of the proposed improvement at a cost of $72,500.00. The ordinance was accompanied by a recommendation of the board that the same be passed. John A. May was appointed commissioner to cast the assessment, and reported that in his opinion the property would be benefited the whole amount of the cost of $72,-500.00, and that the city would be benefited "no dollars."

The records of the board of local improvements, and the endorsements upon a petition of property owners introduced in evidence, show the following proceedings upon the following dates:

On April 22, 1899, the petition of property owners for such improvement was presented to the board. The total frontage on the streets sought to be improved is 15,176.30 feet; the total signatures affixed to the petition represent only 2004.50 feet frontage; one-half of the total frontage is 7588.15 feet, leaving a shortage of 5583.65 feet.

On April 22, 1899, at a special meeting of the board, said petition was referred to the superintendent of streets for his report and recommendation.

On May 3, 1899, the superintendent of streets endorsed upon the petition a recommendation "that a resolution be adopted directing that within petition be complied with." On the same day, May 3, 1899, as appears from the record of the board, on the recommendation of the superintendent of streets, the engineer was instructed to prepare an estimate of the cost of the improvement.

On May 31, 1899, the engineer's estimate was returned to the board, and the first resolution, describing the improvement and reciting the estimated cost thereof, and fixing the time and place for a public hearing, was adopted by the board.

On June 14 and 28, 1899, a public hearing was had upon the resolution, as adopted, in accordance with the notices mailed and posted.

On June 28, 1899, the board adopted a final resolution adhering to the proposed improvement.

Mason & Noyes, (F. S. Lenert, of counsel,) for appellant.

Charles M. Walker, Corporation Counsel, Armand F. Teefy, and William M. Pindell, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

The first point, made by the appellant, is that, where the board of local improvements proceeds upon a petition of property owners, its action must be based upon the petition of the owners of at least one-half of the property fronting upon the proposed improvement; and it is alleged, that, in the present case, the total number of signatures, affixed to the petition for the improvement, represent less than one-half of the total frontage of the property upon the improvement. This objection has no force here, because the present improvement is made in the city of Chicago, which has more than 25,000 inhabitants. Under the act of June 14, 1897, "concerning local improvements," a petition of the property owners is not required in cities having a greater population than 25,000. The requirement, that a petition, signed by the owners of a majority of the property, must be presented before the council can pass an ordinance for a local improvement, applies only to cities having a population less than 25,000. That clause of section 7 of the act of June 14, 1897, which says that the board may originate a scheme for any local improvement either with or without a petition, means that the board may originate a local improvement with a petition where one is required by the act,

186—26

and without a petition where none is required. (*City of Bloomington* v. *Reeves,* 177 Ill. 161; *Patterson* v. *City of Macomb,* 179 id. 163; *Clarke* v. *City of Chicago,* 185 id. 354). As such petition is not required in cities like Chicago, which have a greater population than 25,000, it is immaterial whether the petition in the present case was or was not signed by the owners of one-half of the property fronting upon the proposed improvement.

The further point is made by the appellant, that the estimate of the engineer should be based on the first resolution of the board of local improvements, and that, therefore, such estimate should be made after the passage of said resolution. The records of the board of local improvements in this case show, that the engineer of the board was directed to prepare an estimate of the cost of the improvement in question on May 3, 1899, and that such estimate of the engineer was returned to the board thereafter on May 31, 1899, and that, thereupon, the board passed the first resolution describing the improvement, and reciting the estimate of the engineer at $72,500.00. The act of June 14, 1897, does not provide, that the estimate of the cost of the improvement shall be made after the passage of the first resolution by the board of local improvements. Section 7 of that act provides, that the board "shall adopt a resolution describing the proposed improvement, which resolution shall be at once transcribed into the records of the board." Said section 7 also provides that "said board shall, by the same resolution, fix a day and hour for the public consideration thereof, which shall not be less than ten days after the adoption of such resolution." The same section also provides "that said board shall also cause an estimate of the cost of such improvement * * * to be made in writing by the public engineer * * * over his signature, which shall be itemized to the satisfaction of said board, and which shall be made a part of the record of such resolution." As the resolution must be at

once, that is, immediately after its passage, transcribed into the record of the board, and as the estimate of the cost must be a part of the record of said resolution, it might not be possible, in all cases, to make such itemized estimate after the adoption of the resolution, particularly as not less than ten days must elapse after its adoption before its public consideration at the time fixed by the resolution itself.   It is necessary, however, that the estimate should be incorporated in, and be a part of, the resolution, which is presented at the public hearing.  The first resolution of the board is not required by the statute to describe the nature, character, locality and description of the improvement with the same minuteness, with which the same must be described in the ordinance.

We see no reason why the board of local improvements may not require an estimate of the cost of the improvement to be made for its guidance, when it first originates the scheme of the improvement, and before it adopts the first resolution provided for in section 7.   The statute does not attempt to minutely define the routine of the duties of the board prior to the adoption of the first resolution.  It is a rule of statutory construction in this State that "all general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the legislature may be fully carried out," unless such a construction would be inconsistent with the manifest intent of the legislature in the context of the statute.  (3 Starr & Curt. Ann. Stat. chap. 131, sec. 1, par. 1; *People* v. *Gaulter*, 149 Ill. 39).  The intent of the legislature was, that the proceedings of the board, including the estimated cost of the improvement, should be submitted to the property owners.   Section 8 of the act provides that, at the time and place fixed for the public hearing, the board shall hear representations, not only upon the subject of the necessity for the proposed improvement and the nature thereof, but upon the cost of the improvement as estimated.   Such cost, as estimated,

was here submitted to the property owners at the public hearing, as is required by section 8. Where the property owners have a chance to be heard, and are heard, upon the question of the estimated cost of the improvement, their interests cannot be very materially injured by the fact, that the estimate of such cost is made before or at the time of the adoption of the first resolution, rather than after such adoption. The better practice would seem to be to make the estimate after the adoption of the first resolution which describes the improvement, but it may not be possible, in all cases, to make such estimate ten days before the public hearing is to be had. Section 9 provides that the recommendation by the board, which is presented to the city council with the ordinance, shall be *prima facie* evidence that all the preliminary requirements of the act have been complied with; and, if the fact that the estimate is made before, or at the time of, the adoption of the first resolution, instead of being made after such adoption, be a variance within the meaning of section 9, it is not in the present case such a variance as can be regarded as willful or substantial, and, therefore, does not affect the validity of the proceeding. It is not claimed that the estimate of the cost of the present improvement was excessive, or unfair, or unjust in any way. The only objection, made to such estimate, is, that the board caused it to be made before the adoption of the first resolution, describing the improvement. Under the facts of this case, we do not regard the objection as being well taken.

Objection is made to the ordinance in the present case upon the alleged ground, that the datum, which is essential to the determination of the grade, is not set out and defined in the ordinance itself, but must be determined by reference to certain actions by the trustees of the Illinois and Michigan canal and board of drainage commissioners, etc. The part of the ordinance thus objected to is as follows: "The above heights, as fixed, shall be meas-

ured from the plane of low water in Lake Michigan of
A. D. 1847, as established by the trustees of the Illinois
and Michigan canal, and adopted by the late board of
drainage commissioners and by the late board of public
works of the city of Chicago, as the basis or datum for
city levels." The contention of the appellant is, that,
under section 8 of the act of June 14, 1897, the ordinance
is required to prescribe only the nature, locality, char-
acter and description of the improvement; and that said
section does not contain the language of the amendment,
made to section 19 of article 9 of the City and Village
act in 1887, which amendment provided, that the ordi-
nance should specify the nature, character, locality and
description of the improvement, "either by setting forth
the same in the ordinance itself, or by reference to maps,
plats, plans, profiles or specifications thereof on file in
the office of the proper clerk, or both." It is said, that,
inasmuch as the act of 1897 does not authorize such ref-
erence to maps, plats, etc., as is provided for by the
amendment of 1887 above specified, (Laws of Ill. 1887,
p. 107,) therefore, the present ordinance is defective, be-
cause the plane of low water in Lake Michigan is not
set out in the ordinance itself, but must be established
by reference to matters *dehors* the ordinance. We regard
the objection as being without force.

The ordinance does not refer here to maps, plats,
plans, profiles or specifications or other matters outside
of the ordinance itself which particularly describe this
particular improvement. The ordinance merely refers
to an established datum as determining the grade of the
improvement, which is generally recognized as the basis
for city levels. Such datum is not necessarily a specifi-
cation of this particular improvement, but is an element
in the determination of the proper grade, which applies
to any and all improvements. In *City of Sterling* v. *Galt*,
117 Ill. 11, referred to by counsel for the appellant, speci-
fications were referred to in the ordinance as being in

the city clerk's office, when the statute did not authorize such a reference; and it was there held, that a source of information was referred to in the ordinance, which the law did not recognize in such matters. But, here, the datum referred to is the ancient low-water mark in Lake Michigan in 1847. The plane of low-water mark in Lake Michigan of A. D. 1847, as established by the trustees of the Illinois and Michigan canal, is a source of information which the law recognizes in these matters. Such a low-water mark, when thus established, is like any object from which a survey may be made, or a level may be run. The ordinance requires the streets to be graded to certain heights, as fixed by that mark. This is all that was required. In our opinion the grade, as established by the ordinance, is sufficient; and the ordinance is not invalid as referring to a matter *dehors* the ordinance. The sufficiency of an ordinance, containing the same words upon this subject as are contained in the present ordinance, has been recognized in the late case of *Chicago Terminal Transfer Railroad Co.* v. *City of Chicago,* 184 Ill. 154.

Counsel for appellant make the further point that, "in case filling is necessary in the preparation of the subgrade, the contractor cannot know from this ordinance what kind is required; hence, he cannot make an intelligent bid for the work." As the ordinance here does not call for any filling, and as none is provided for in the estimate made by the engineer, it must be presumed that no filling was required. If it had been required, it is to be presumed that it would have been provided for in the estimate.

We are of the opinion that the trial court committed no error in overruling the objections made by the appellant. Accordingly, the judgment of the county court is affirmed.

*Judgment affirmed.*