THE SOUTH PARK COMMISSIONERS

*v.*

THE FIRST NATIONAL BANK OF CHICAGO.

*Opinion filed December 21, 1898.*

</div>

1. STATUTES—*title of act is not conclusive of legislative intention.* The intention of the legislature may be ascertained by considering the whole act and construing one part by another; but the title of the act is not conclusive of such intention, although it is entitled to consideration in determining the same.

2. SAME—*statutes in pari materia are construed together.* The meaning of words used in a given statute may be ascertained from a consideration of other acts *in pari materia,* where the words are used.

3. SAME—*statutes need not refer to each other to be in pari materia.* Acts relating to the same subject matter and not inconsistent with each other are *in pari materia,* although they contain no reference to each other and are passed at different times.

4. SAME—*when plural meaning cannot be given to a word importing singular number.* In construing a statute a plural meaning will not be given the singular number, notwithstanding clause 3 of section 1 of the act on the construction of statutes, (Rev. Stat. 1874, p. 1011,) where the plural will lead to an absurd consequence.

5. PARKS—*meaning of term "corporate authorities," as used in Park act of 1895.* The term "corporate authorities," as used in the Park act of 1895, authorizing a two-mill tax for park purposes, (Laws of 1895, p. 285,) when construed in the light of other acts *in pari materia,*

refers to the town supervisor, clerk and assessor, and not to the park boards themselves.

6. SAME—*Park act of 1895 not applicable to the Chicago South Park Commissioners.* The Park act of 1895, concerning the two-mill tax for park improvement, (Laws of 1895, p. 285,) refers to a single town where a park board was in existence at the time of the passage of the act, and does not include the South Park Commissioners of Chicago, whose territory embraces three towns; and a two-mill tax levied by them under the alleged authority of that act is void.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

The bill in this case was filed to restrain the county clerk from extending upon the collector's books a tax of two mills on the dollar on the taxable property in the park district, controlled by the appellants, amounting to $295,164.00, that sum having been included in an ordinance passed by the South Park Commissioners, providing that $785,246.00, the aggregate of the items specified therein, should be levied upon the property subject thereto. The park commissioners had certified said amount to the county clerk of Cook county as their tax levy for the year 1897. The defendant to the bill originally filed was Philip Knopf, the county clerk. Knopf demurred to the bill, and, his demurrer being overruled, he elected to stand by it; and the court entered a decree, perpetually enjoining him from extending the said sum of $295,164.00, or any sum including it, as a tax upon the district. From the decree so entered the county clerk took an appeal to this court; and, in *Knopf* v. *First Nat. Bank of Chicago*, 173 Ill. 331, we reversed the decree so entered, upon the ground that the present appellants, the South Park Commissioners, were not made parties to the bill; and the cause was remanded to the circuit court with leave to the complainant, the present appellee, upon payment of all costs, to make the park commissioners defendants.

After the former decree was reversed, the cause was re-docketed in the court below, and the bill was amended

by making the South Park Commissioners, the present appellants, parties defendant. The appellants demurred to the bill, and upon argument the court below overruled the demurrers, and, the defendants having elected to stand by their demurrers, the court entered a decree finding, that the park commissioners passed an ordinance, containing the sections as set out in the amended bill; that the clerk had declared his intention of extending the entire sum of $785,246.00; that the sums provided for in sections 1, 2 and 3 of the ordinance were legal and valid; that the attempted levy in addition thereto, specified by section 4 of the ordinance, of $295,164.00, was illegal and void, and in excess of the power of the commissioners to levy or certify to the county clerk; and, by the decree, it was ordered that the county clerk be enjoined from extending the said sum of $295,164.00, or any sum including the same. From the second decree thus entered the South Park Commissioners prosecute the present appeal.

The act, under which the South Park Commissioners claim to have authority to levy the tax of two mills on the dollar on all the taxable property within the park district, which they control, is an act of the legislature approved June 17, 1895, and entitled "An act to enable park commissioners to maintain and govern parks and boulevards under their control." The act is as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That in any town which is now included within the limits of any city in this State, in which a board of park commissioners shall now exist, having authority by law to acquire land and the appurtenances in trust for the inhabitants of such town, and for such parties or persons as may succeed to the rights of such inhabitants, and for the public, as public promenades and pleasure grounds and ways, and for no other use or purpose without the consent of a majority, by frontage, of the owners of the property fronting the same, and without the power to sell, alienate, mortgage

or incumber the same, the corporate authorities of any such town authorized by law to assess taxes for park purposes shall, upon the receipt of a certificate in writing from any such board of park commissioners, on or before the first day of August in each year, levy and assess, in addition to all other taxes now authorized by law to be levied and assessed for the purpose of governing and maintaining any such parks and boulevards, two mills on each dollar of the taxable property in said town and within the park district, subject to taxation for park and boulevard purposes, according to the valuation of the same, as made for the purpose of State and county taxation; and such additional two mills on the dollar of the taxable property in said town and park district shall be used and expended by such board of park commissioners in governing and maintaining any parks, boulevards or pleasure ways under the jurisdiction, management and control of any such board of park commissioners, and for paying any other necessary and incidental expenses incurred in and about the management of any such parks and boulevards, and such additional two mills shall, by the officer authorized by law to assess and collect taxes for park purposes, be collected and paid over the same as other park taxes are now required by law to be collected and paid over." (3 Starr & Curtis' Stat. 1896, p. 2894).

GREEN, HONORE & PETERS, for appellants.

EDWARD O. BROWN, and CHARLES B. PIKE, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

When the present cause, which is reported as *Knopf* v. *First Nat. Bank of Chicago*, 173 Ill. 331, was before us at a former term, three questions were decided, to-wit: first, that the South Park Commissioners should have been made parties to the suit; second, that a single tax-

payer had a remedy in equity to enjoin the extension of
an illegal tax; and third, that the present appellee, the
First National Bank of Chicago, could maintain the bill
in behalf of its stockholders.   The only question then
left undisposed of, and which will now be considered, is
whether the act of June 17, 1895, set forth in the state-
ment preceding this opinion, applies to the South Park
Commissioners.  If the act does apply to the South Park
Commissioners, they had a right to levy the tax of two
mills on the dollar, amounting to $295,164.00, on all the
taxable property within the park district controlled by
them.   If the act does not apply to said commissioners,
then they had no authority to levy said tax, and the de-
cree of the court below, enjoining its extension upon the
books of the collector, was correct.

Counsel for appellants claim, that the title of the act
is broad enough to embrace all park commissioners, in-
cluding the present appellants.   The act, according to
its title, is one "to enable park commissioners to main-
tain and govern parks and boulevards under their con-
trol."   In determining the meaning of a statute, courts
will endeavor to ascertain the intention of the legisla-
ture in framing it.   Although the title of the act will
have its due share of consideration in the effort to deter-
mine the legislative intent, yet such title is not conclu-
sive upon the subject of such intention.   The intention
of the legislature may be ascertained by considering the
whole act, and construing one part by another, and one
clause with reference to its connection with other clauses.
(*People ex rel.* v. *Gaulter,* 149 Ill. 39).

A consideration of all the language and clauses of
this act, which consists of but one section, leads to the
conclusion, that the act was intended to apply only to
one town, in which a board of park commissioners should
exist at the time of its passage. The act provides, "that,
in any town which is now included within the limits of
any city in this State, in which a board of park commis-

sioners shall now exist, * * * the corporate authorities of any such town, authorized by law to assess taxes for park purposes, shall * * * levy and assess, in addition to all other taxes now authorized by law, * * * two mills on each dollar of the taxable property in said town and within the park district," etc. The use of the words, "any town," "such town," and "said town," clearly refers to a single town, and not to several towns or more than one town. Again, the board of park commissioners, referred to in the act, is a board "having authority by law to acquire land and the appurtenances in trust for the inhabitants of such town." The expression, "such town," as here used, refers to one town. Again, the act describes a board of park commissioners, having authority by law to acquire land, etc., "as public promenades and pleasure grounds and ways, and for no other use or purpose without the consent of a majority by frontage of the owners of the property fronting the same." This language is not found in the act organizing the South Park Commissioners but is found in the act organizing the West Park Commissioners in the city of Chicago. Indeed, the language of the act, which describes the authority of the park commissioners therein referred to, is taken almost literally from section 5 of the act, creating the board of park commissioners in the town of West Chicago. (Tuley's Laws and Ordinances of Chicago, 1873, p. 588).

Inasmuch as the act of June 17, 1895, is intended to apply to one town only and to a board of park commissioners existing in one town only, it could not have been intended to apply to the South Park Commissioners, because the park district, controlled by the South Park Commissioners, includes the three towns of South Chicago, Hyde Park and Lake. Section 1 of the act of February 24, 1869, organizing the South Park Commissioners, provides "that five persons, who shall be appointed by the Governor of the State of Illinois, together with their

successors, be, and they are hereby constituted a board
of public park commissioners for the towns of South Chi-
cago, Hyde Park and Lake, to be known under the name
of the South Park Commissioners." (Tuley's Laws and
Ordinances, 1873, p. 581). This court has had occasion, in
several cases, to pass upon the validity of the South Park
act, and construe its provisions. In *People* v. *Salomon*, 51
Ill. 37, we said (p. 51): "The union of these towns (South
Chicago, Hyde Park and Lake) was for a special purpose,
and outside of that purpose they are left with all their
functions undisturbed, precisely as they existed before
the passage of the law. Establishing them with their
consent as a park district deprived them of none of the
franchises bestowed upon them as towns, and curtailed,
in no degree, the fair proportion of either of them. * * *
The people of these three towns, by voting for the law,
have made the commissioners corporate authorities of
such towns, and empowered them to assess the requisite
tax upon the property of the towns." In *People ex rel.* v.
*Brislin*, 80 Ill. 423, it was held that the towns of South
Chicago, Hyde Park and Lake were erected into a park
district, and that, the people of those towns having by
vote accepted the provisions of the Park act, the board of
park commissioners thereby created became a *quasi* muni-
cipal corporation, in whom was vested the power to assess
and collect taxes within the park district so created.
Again, in *Dunham* v. *People*, 96 Ill. 331, it was held that the
park commissioners, controlling the district composed of
the three towns above named, were to be regarded as the
corporate authorities of such towns. Under the park acts
passed by the legislature of this State, and under the de-
cisions of this court interpreting those acts, there can be
no doubt that two classes of park boards have been cre-
ated. The first class consists of those boards, who cannot
levy their own taxes, but must call upon the corporate
authorities of the town to do so. The second class con-
sists of those park boards, who are themselves corporate

authorities of the towns for park purposes, and can levy their own taxes. The appellants, the South Park Commissioners, belong to the second class. Section 9 of the act of February 24, 1869, already referred to, provides that "the said board of park commissioners shall, annually, on or before the first day of December in each year, transmit to the clerk of the county court of Cook county an estimate, in writing, of the amount of money, not exceeding in any one year $300,000.00, necessary for the payment of the interest on the bonds issued by said board, and that, in addition thereto, will be required for the improvement, maintenance, and government of said park during the current year." (Tuley's Laws and Ordinances of Chicago, p. 584).

In the act of June 17, 1895, "the corporate authorities of any such town authorized by law to assess taxes for park purposes" are evidently the regular corporate authorities of the town, and not the park commissioners themselves. In determining what is meant by the expression, "corporate authorities of any such town," reference may be made to acts of the legislature, passed from time to time upon the subject of parks and park commissioners, and their powers and duties. "Statutes, which are not inconsistent with each other, and which relate to the same subject matter, are *in pari materia*, and should be construed together, and effect be given to them all, although they contain no reference to one another, and were passed at different times. * * * In construing a given act, the meaning of words or terms, as used therein, may be gathered from the consideration of other acts *in pari materia*, in which such words or terms were also used." (23 Am. & Eng. Ency. of Law, pp. 311, 316; *Reiche* v. *Smyth*, 13 Wall. 162; *Robbins* v. *Railroad Co.* 32 Cal. 472).

On June 16, 1871, the legislature passed an act entitled "An act to enable corporate authorities to levy a tax to improve public parks and boulevards," etc. (Stat. of Ill. —Meyer's ed.—p. 62). On May 31, 1879, the legislature

passed an act to amend section 1 of an act, entitled "An act in regard to the completion, improvement and management of public parks," etc. (Laws of Ill. 1879—Bradwell's ed.—p. 163). On June 14, 1887, the legislature passed an act, entitled "An act to authorize corporate authorities of towns, having an indebtedness heretofore created, to pay the cost of procuring lands for public parks in such towns," etc. (Sess. Laws of 1887, p. 243). On June 12, 1891, the legislature passed "An act to authorize the corporate authorities of towns to issue bonds for the completion and improvement of public parks and boulevards," etc. (Sess. Laws of 1891, p. 173). On June 21, 1895, the legislature passed "An act to authorize the corporate authorities of towns to issue bonds for the completion and improvement of public parks and boulevards," etc. (Sess. Laws of 1895, p. 264). In all of these acts "the corporate authorities of the town" are defined to be the town supervisor, the town collector and the town clerk. Inasmuch as the statutes thus referred to and the act of June 17, 1895, are *in pari materia,* and must be construed together so far as they make use of common terms, there can be no doubt that the corporate authorities of the town, as referred to in the act of June 17, 1895, are the town supervisor, clerk and assessor. But the corporate authorities, controlling the affairs of the South Park Commissioners, are the South Park Commissioners themselves, and not the town officials. It would seem to follow, therefore, that the corporate authorities, referred to in the act now under consideration, are not the present appellants; and that the boards of park commissioners, contemplated by the act in question, are such boards as are required to call upon the corporate authorities of the town to levy their taxes.

Counsel for appellants refer, however, to the third clause of section 1 of chapter 131 of the Revised Statutes in reference to the construction of statutes, where it is said: "Words importing the singular number may extend

and be applied to several persons or things, and words importing the plural number may include the singular." (3 Starr & Curtis' Stat.—2d ed.—p. 3834). Applying the rule of construction thus laid down to the present case, counsel say that the word, "town," as used in the act of June 17, 1895, may be read as the word "towns;" and that, if the expression, "the corporate authority of any such town," be read as meaning the corporate authorities of any such "towns," it may refer to the South Park Commissioners, as they are the corporate authorities of the three towns composing their district. Such a construction as is here contended for would lead to an absurd consequence. "Where a particular construction will lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the legislature to avoid such conclusion." (*People* v. *Gaulter, supra*). The language of the act is: "The corporate authorities of any such town, authorized by law to assess taxes for park purposes, shall, upon the receipt of a certificate in writing from any such board of park commissioners, * * * levy and assess," etc. If the corporate authorities of any such town, as those words are used in the act, refer to and mean the South Park Commissioners, then the South Park Commissioners, upon the receipt of a certificate in writing from themselves, shall levy and assess two mills on each dollar on the taxable property, etc. It would seem to be absurd to require the park commissioners to make out a certificate in writing, and themselves receive it, as a condition precedent to the levy and assessment of the tax. We are, therefore, forced to the conclusion that the corporate authorities referred to in the act are the ordinary town authorities, to-wit, the assessor, clerk and supervisor, and not the park commissioners.

Upon the whole our conclusion is, that the act of June 17, 1895, was not intended by the legislature to refer to the South Park Commissioners, whose district is composed of three towns, instead of one. This conclusion

leads to the further conclusion, that the levy of the two mill tax was illegal and void, and that the action of the court below in enjoining the same was correct.

The decree of the circuit court of Cook county is affirmed.                                          *Decree affirmed.*