## JAMES HELM

*v.*

## THE CITY OF GRAYVILLE.

*Opinion filed December 22, 1906.*

1. STATUTES—*when maxim that "the expression of one thing is the exclusion of another" does not apply.* The maxim "the expression of one thing is the exclusion of another" will not be applied in construing a statute where the plain purpose of the statute is thereby defeated.

2. SAME—*statutes in pari materia should be construed together.* In arriving at the proper construction to be given a statute other statutes relating to the same subject should be considered.

3. FERRIES—*act of 1897 does not exclude a city from acquiring ferry site by condemnation.* The provision of section 1 of the act of 1897, (Laws of 1897, p. 92,) that it shall be lawful for any city or village to build or acquire, *by purchase, lease or gift,* and to maintain, ferries and bridges and the approaches thereto, does not exclude the acquiring of a ferry site by a city by the exercise of the power of eminent domain.

4. SAME—*city may acquire ferry site beyond its limits by condemnation.* Section 23 of the Ferries act, authorizing the condemnation of sites for landings, ferry-houses and approaches, while it is part of an act which relates to the licensing and government of ferries by private persons, does not exclude municipal corporations from its operation, and, since the legislature has subsequently authorized municipal corporations to construct and operate ferries, such corporations may acquire, by condemnation, ferry sites beyond their corporate limits.

5. SAME—*what sufficiently shows that ferry is for a public purpose.* A petition by a city to condemn land for a ferry, the establishment of which is authorized by an ordinance which is made a part of the petition, which recites that the business interests of the city demand greater ferry facilities than are afforded by the one ferry which is in operation, shows with reasonable sufficiency that the ferry is not for private purposes.

6. SAME—*effect where one landing of ferry is in another State.* On appeal by a land owner from a condemnation judgment by which a city acquires land in Illinois for a ferry, one landing of which will be in another State, only so much of the proceeding will be considered as relates to territory within this State, since, if the city is unable to use the land condemned because of its inability to acquire

land in the other State, the title to the land condemned will revert to the original owner.

7. EMINENT DOMAIN—*land to be taken must be sufficiently described.* A judgment in condemnation cannot be sustained where the land proposed to be taken is not sufficiently described in the petition and no description whatever is contained in the verdict and judgment, which do not even refer to the petition.

APPEAL from the County Court of Wabash county; the Hon. S. Z. LANDES, Judge, presiding.

C. S. CONGER, W. A. MUSSETT, and P. J. KOLB, for appellant:

The expression of one thing or one mode of action in an enactment is generally held to be an exclusion of all other things and modes.

Statutes conferring the power to exercise the right of eminent domain are to be construed strictly. Unless both the letter and the spirit of the statute relied upon clearly confer the claimed power it cannot be exercised. *Ligare* v. *Chicago,* 139 Ill. 46; *East St. Louis* v. *St. John,* 47 id. 463; *Illinois Trust Co.* v. *Railway Co.* 208 id. 419; *Harding* v. *Goodlett,* 24 Am. Dec. 546.

The authority of a municipality to impose burdens upon persons or property is wholly statutory, and where its exercise may result in divestiture or transfer of property, the right to exercise it must be clear and strictly pursued. *Chicago* v. *Blair,* 149 Ill. 310.

As a rule, a municipal corporation cannot condemn property beyond its limits unless anthority to so do is expressly given. 1 Lewis on Eminent Domain, (2d ed.) sec. 240.

Proceedings by a village to condemn land outside of its jurisdiction are unlawful unless the village charter expressly gives the power to so do. *Houghton* v. *Copper Mining Co.* 57 Mich. 547.

A public necessity must exist before the right of eminent domain can be exercised, and this necessity must appear, to

give the court jurisdiction. *Chaplin* v. *Highway Comrs.*
129 Ill. 651.

In order to give the court jurisdiction to condemn, the
land sought should be mentioned in the petition; and the
same land must be described in the several orders of the court
when it should properly occur, and in the final order. *Railway Co.* v. *Pound,* 22 Ill. 399.

Property sought to be condemned should not only be
described in the petition with reasonable certainty, but that
description should be followed in the subsequent orders, and
in the verdict of the jury and the judgment of the court.
*Railway Co.* v. *Chicago,* 132 Ill. 372; *Railway Co.* v. *Turner,* 68 id. 187.

E. B. GREEN, and THEO. G. RISLEY, (C. O. ELLIS, of
counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was a proceeding begun by appellee, against appellant and others, under section 1 of the act of 1897, entitled
"An act to amend an act entitled 'An act to enable cities and
villages to build, acquire and maintain bridges and ferries
outside of their corporate limits, and to control the same,'
approved and in force May 5, 1879, as amended by an act
approved June 16, 1891. Approved June 9, 1897." (Hurd's
Stat. 1905, chap. 24, par. 194.) The ferry sought to be
established is across the Wabash river at a place where the
said river forms the boundary line between the States of
Illinois and Indiana. The petition was filed in the county
court by appellee to condemn a small portion of appellant's
land on the bank of the river for a ferry landing, and also
a portion of the land of appellant and others for a road leading from the city of Grayville to said ferry landing. The
distance from the said city to the proposed ferry landing is
about two miles. Appellant and one other defendant moved
to dismiss the petition as finally amended, giving numerous

reasons as grounds for said motion. These objections were overruled by the court, whereupon the objectors filed an answer to the petition denying all its allegations except that appellee was an incorporated city and had caused a survey of said proposed road and ferry landing to be made. Appellant also filed a cross-petition, claiming that other lands belonging to him, not proposed to be taken and not described in the petition, would be damaged by the proposed road and ferry landing, and asked to have damages to such land assessed in the condemnation proceeding. A jury was empaneled under the Eminent Domain act, and after hearing the evidence and viewing the premises returned a verdict awarding appellant $972.70 for land taken and $645 damages to land not taken. Upon these findings of the jury the court rendered judgment, and ordered that upon payment thereof appellee enter upon and take possession of the property condemned. From that judgment appellant prosecutes this appeal.

It is first contended by appellant that the act under which the proceeding was instituted does not authorize the condemnation of lands for the purposes in said act mentioned. So much of said act as is necessary to an understanding of this question is as follows: "That it shall be lawful for any city or village within this State to build, or acquire by purchase, lease or gift, and to maintain ferries and bridges, and the approaches thereto, for each ferry or bridge within the corporate limits, or within five miles of the corporate limits of such city or village; also, to construct, improve and maintain roads within five miles of the corporate limits of such city or village connecting with such bridges or ferries on either side thereof."

It is not claimed by appellant that a city has not the power, under that section, to condemn land for a road connecting with a ferry, but his position is that there is no authority to condemn land for a ferry landing, and that the city having no ferry landing and no right to acquire one by

condemnation, the proceeding for the condemnation of the road as well as the ferry landing must fail. Appellant's argument is based upon the proposition that the act having expressly mentioned "purchase, lease or gift" as methods by which a city may acquire and maintain ferries, all other means are excluded, and that unless the land for a ferry landing can be acquired by purchase, lease or gift, the power conferred by the act to acquire and maintain a ferry cannot be exercised.

It was said in *Gaddis* v. *Richland County,* 92 Ill. 119 (p. 124) : "The expression of one thing or one mode of action in an enactment is usually held to be an exclusion of all other things or modes." This is the general rule, to which there are certain exceptions, which was recognized by the court in the language quoted, for it was there said that the expression of one thing or mode is *usually* held to exclude all others. The maxim, "The expression of one thing is the exclusion of another," should never be used to override a different purpose plainly indicated. (26 Am. & Eng. Ency. of Law,—2d ed.—605.) The rule is well established that a grant of power may either be express or may arise by necessary implication.

While the only methods expressed in the act for acquiring a ferry landing are by purchase, lease or gift, the paramount object of the enactment was to confer power upon cities to acquire and maintain ferries, and we are of opinion it was not the intention of the legislature, and the act should not be construed, to restrict the municipality to the method of acquiring land by purchase, lease or gift in the exercise of the power. We know of no good reason that could be given, as a matter affecting public policy or public welfare, why the legislature should have deemed it advisable to authorize cities to acquire land for the establishment of a ferry by purchase but inadvisable to allow them to acquire it by condemnation, while very good reasons to the contrary might be given. The primary object of the act, as we have said,

was to empower cities to establish and maintain ferries, and this grant of power being for a public purpose, we think must be held, in the absence of a contrary intention appearing, to carry with it, in addition to the methods mentioned, the right to condemn under the Eminent Domain act when the land cannot be acquired by the modes expressly mentioned in the act. A thing within the intention of the statute is as much within the statute as if it were within the letter. (*Castner* v. *Walrod,* 83 Ill. 171; *Perry County* v. *Jefferson County,* 94 id. 214; *People ex rel.* v. *Hoffman,* 97 id. 234.) These views, we think, find support in *Maywood Co.* v. *Village of Maywood,* 140 Ill. 216.

Section 23 of chapter 55 (Hurd's Stat. 1905, p. 1083,) expressly confers power to take or damage private property for a ferry landing when it shall be necessary for the establishment or use of a ferry. Said section reads as follows: "When it shall be necessary, for the establishment or use of any ferry, to take or damage private property, for a landing, ferry-house, or approach to any ferry, proceedings may be had for that purpose under any act that may then be in force for the exercise of the right of eminent domain, subject to all restrictions that may be prescribed by law."

Appellant contends that this statute can have no application, and the power conferred by it cannot be invoked by cities in procuring land for the establishment of a ferry. It is said the section referred to is one section of the chapter on ferries; that said chapter is complete within itself, and that the section quoted is applicable only to the establishment of ferries to be operated under the provisions of said chapter. The chapter prohibits any person from keeping or using a ferry for profit or hire unless licensed by the county board so to do. Said chapter further provides for the manner of granting licenses, fixing the rate to be charged, rules for the government and management of the ferry, penalties for their violation, etc., and concludes with the section above quoted. Said chapter relates to the licensing and govern-

ment of ferries operated by private individuals, it is true, but none of the provisions of that act make any reference to the right or manner of acquiring land except section 23. It will be seen that said section is not, by its terms, limited in its application to the establishment of ferries to be operated under the provisions of the chapter of which it forms a part. The title of the act is, "An act to revise the law in relation to ferries," and section 23 authorizes the condemnation of land "when it shall become necessary for the establishment or use of any ferry." This language appears to us broad enough to include every person or corporation entitled to establish and operate ferries, and when the legislature conferred the right upon municipal corporations to establish and maintain ferries and the grant of the power contained no express authority to condemn land, it may be done under authority of said section 23. In arriving at the proper construction to be given a statute, other statutes relating to the same subject should be considered. "Statutes are *in pari materia* which relate to the same person or thing or to the same class of persons or things, and the phrase is applicable to public statutes or general laws made at different times and in reference to the same subject." 26 Am. & Eng. Ency. of Law, (2d ed.) 621; *South Park Comrs.* v. *First Nat. Bank,* 177 Ill. 234; *Stribling* v. *Prettyman,* 57 id. 371.

It is also contended by appellant that it appears from the face of the petition that the lands are sought to be condemned for a private purpose. The city of Grayville is situated on the Wabash river, a navigable stream, and there is one ferry in operation within the corporate limits of the city. The petition recited that the business interests of the city demand greater ferry facilities across the Wabash river than were afforded by the one ferry in operation. While this is not as clear a statement of the purpose for which it was sought to establish another ferry as might have been made, we think its reasonable meaning is that it was for public purposes and interests, and not for the interest of a private individual or

individuals. This view is also aided by the fact that the city council adopted an ordinance providing for the establishing of said ferry, which ordinance is made a part of the petition.

The objection that one landing of the ferry will be in the State of Indiana is not one proper for our consideration. It was alleged in the petition and proven at the hearing that appellee had made arrangements necessary to the acquiring and using of the landing in Indiana. Our view, however, is, that, so far as this proceeding is concerned, we can only consider it so far as relates to territory within the limits of the State of Illinois. If the land in this State condemned for the use of the road and ferry landing could not be used for those purposes because of appellee not acquiring any landing on the Indiana side, it would revert to the original owner. The injury that might result, therefore, from the failure to acquire a landing in Indiana would be to appellee, and not to appellant. We think it sufficiently appears from the petition, and the proof offered in support of it, that the road sought to be established was necessary if the ferry was to be established and operated.

As to appellant's objection that the road begins more than one-fourth of a mile outside the city limits, the proof shows said proposed road has a starting point at a public road connecting with the city of Grayville, and the act under which the road is sought to be established authorizes cities to construct and maintain roads within five miles of their corporate limits, connecting with a ferry.

Appellant also insists that there is no proper description in the ordinance, petition, verdict of the jury, and judgment thereon, of the land taken. The ordinance describes the land desired for the ferry landing as a point on said Wabash river "situate in the *south-west* quarter of fractional section 23." The petition avers that appellant owns all that part of the *north-west* quarter of section 23 on which the line of the proposed road is located, "including said ferry landing." The ordinance refers to and makes a part thereof a map or

blue-print made by the county surveyor of White county. Said map shows the location of the city of Grayville, a large section of the Wabash river, on the bank of which, at a certain place, a small triangular-shaped tract is marked "Proposed ferry landing." From the starting point of the proposed road lines are drawn indicating the proposed location and route of said road to said proposed ferry landing. It is nowhere indicated on said map that it is drawn to scale, and there are no measurements indicated on said map showing the dimensions of said proposed ferry landing. The petition avers that it is necessary for petitioner to have at "least one acre of land at the point on the bank of said river where said ferry has been located and established," and that it had caused to be surveyed and definitely and correctly marked on a map filed with and made a part of the petition, which is the same map referred to in the ordinance, "the point on said river where said ferry landing is located and established." The petition also refers to and makes the ordinance a part thereof. The verdict of the jury was as follows: "We, the jury, find that the defendant, James M. Helm, is entitled to receive from the petitioner the sum of $972.70 for the value of the land taken, and the additional sum of $645 for the damages to the land not taken." Thereupon the court rendered judgment that the petitioner pay "to James M. Helm $972.70 value of the land taken, additional sum of $645 damages to land not taken," and that upon the payment of said sum the petitioner "enter upon said property and use the same, and that the payment, in full, of said compensation and damages, ascertained as aforesaid, shall constitute a complete justification of the taking of the said property by the petitioner." Neither in the verdict of the jury nor in the judgment of the court thereon is there any description of the land taken for the proposed ferry landing, nor is any reference made in either of them to the petition and plat for a description of the land taken or of the land damaged and not taken. Indeed, we are unable to see how

the verdict and judgment could be aided by reference to the map and petition. It was said in *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 132 Ill. 372 (p. 376) : "The property sought to be condemned should not only be described in the petition with reasonable certainty, but that description should be followed in the subsequent orders and in the verdict of the jury and judgment of the court." In *Springfield and Illinois Southeastern Railway Co.* v. *Turner,* 68 Ill. 187, it was said, in condemnation proceedings the land sought to be condemned should be described with reasonable certainty in the petition and followed in the judgment. In *Suver* v. *Chicago, Santa Fe and California Railway Co.* 123 Ill. 293, the petition was for the condemnation for a right of way over a tract of land containing 106 acres, and properly described the land to be condemned. The verdict of the jury described the land taken as "land taken for right of way across the 106 acres as described in the petition and for the damages to the portion of said 106 acres not taken." The judgment described the land condemned as "the land taken for right of way across the 106 acres as described in the petition." The court held that as the description in the petition of the land taken and of the tract out of which, it was taken was reasonably certain, it was sufficient that the verdict and judgment referred to these descriptions as contained in the petition. In the case at bar neither the verdict nor judgment, as we have said, referred to the petition, and if they had, it would not have obviated the difficulty because said petition did not contain a description of the property to be taken, as required by section 2 of the Eminent Domain act. In addition to the failure to describe the premises to be taken for the ferry landing or describing them defectively, the ordinance, which gave the location of the said ferry landing as in the *south-west* quarter of section 23, was by the petition made a part thereof, the same as was the map referred to, so that the land is described in one part of the petition as in the *south-west* quarter of section 23 and

in another place in the *north-west* quarter of said section. As we have seen, the map referred to in the ordinance and petition, and made a part of each of them, correctly located the landing in the *north-west* quarter of section 23, but it contained no proper description of the land proposed to be taken, so that there was no description of the land in the petition. But even if the petition had described the land with sufficient certainty, the judgment should have at least referred to it as the land described in the petition. We are of opinion, therefore, these defects are fatal to the judgment of the county court, and said judgment is reversed and the cause remanded.

*Reversed and remanded.*