## FORFEITURES UNDER THE RAILWAY COUPLER ACT.

Common Pleas Court of Hamilton County.

THE STATE OF OHIO V. THE PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY CO.

Decided, June 18, 1912.

*Railways—Equipment of Cars with Automatic Couplers—Dirt Trains are Engaged in "Traffic"—Purpose of the Act is Protection of Train Operatives—Acts of 1902 and 1906 Harmonized.*

1. The moving of dirt by a railway company from one point on its line to another, for the purpose of constructing a yard or fill, constitutes "traffic" within the meaning of Section 8950, P. & A. Anno. G. C., requiring that all cars used in moving state traffic be equipped with automatic couplers.

2. The use of cars equipped with couplers of the character specified by the statute, except that they will not couple by impact, subjects the company to forfeitures as provided by Section 8965, relating to couplers out of repair, rather than to the forfeiture provided in Section 8954, relating to cars which have not been equipped with couplers.

*John V. Campbell* and *Charles A. Groom,* Assistant Prosecuting Attorneys, for the state.

*Robert Ramsey,* contra.

CUSHING, J.

This action is brought by the state of Ohio against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, a corporation, to recover the sum of $1,100 as a penalty for the violation by the defendant company of an act of the Legislature

of Ohio, passed March 19, 1906 (98 O. L., 67), for using eleven cars in state traffic contrary to the provision of the act in question. The state filed a petition. The defendant filed an answer and an amended answer. The pleadings state the facts, and it is sought by a ruling of the court to determine the question of law involved, assuming the facts to be as stated in the pleadings.

The pleadings present two questions for determination:

1st. Is the moving of dirt from one point on the defendant company's road to another for the purpose of making a yard or a fill, traffic within the meaning of the act of the Legislature above referred to?

2d. Does the act of the defendant company as stated in the pleadings come within the provisions of the act of March 19, 1906, and what effect, if any, did the enactment of that law by the Legislature have upon another act of the Legislature of Ohio passed May 12, 1902?

The act of the Legislature of the state of Ohio, passed March 19, 1906, reads as follows:

Sec. 2. "That it shall be unlawful for any such common carrier to haul, or permit to be hauled or used on its line, any locomotive, car, tender, or similar vehicle used in moving state traffic, not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Section 6 of the same act provides a penalty of $100 for each and every such violation to be recovered in an action against the offender.

Act of May 12, 1902, Section 3565-23e, Revised Statutes:

"It shall be the duty of the inspector to inspect the couplers. * * * He shall also on discovering a defective coupler * * * immediately report the same to the superintendent of the road * * * and to the agent thereof." * * *

Section 3565-23f, Revised Statutes:

"Any road whose superintendent or station agent shall receive such notice * * * shall cause the same to be immediately repaired." * * *

Section 3565-23$h$, Revised Statutes:

"Any railroad which fails to comply with any of the provisions of this act shall forfeit and pay to the state of Ohio, the sum of twenty-five ($25) dollars for each day such defective coupler　*　*　*　is kept in use contrary to the provisions hereof."

The two acts in question are inconsistent in that the act of 1902 provides for inspection of couplers with a penalty of $25 a day for each day a car is used when the said couplers are out of repair, while the act of 1906 provides a penalty of $100 for the defendant to haul or permit to be hauled or used on its line a car not equipped with automatic couplers.

It does not seem necessary to discuss at any length the question made by the defendant company as to whether the hauling of dirt from one point to another on the company's road is traffic within the meaning of the acts quoted. The acts in question were passed for the purpose of protecting the operatives of railroads, and while traffic in its broader sense is transportation of goods along the line of travel, as a road, railway, canal or steamboat route, it could hardly be said that because the company was moving dirt from one point to another on its line, that that act was any different from hauling grain from one station on the company's line to another. The apparent purpose for which the acts were passed was the protection of the operatives of the railroad, and the material with which the trains were loaded could hardly make any difference.

The state claims in the case at bar that under the above section of the statute the defendant company is liable to the state in the sum of $100 for each time a car is hauled in traffic when the same is not equipped with couplers as provided in the act of 1906, or if the cars are so equipped and the same are in such condition that they do not couple automatically by impact and can not be uncoupled without the necessity of men going between the cars, then the company is liable in the sum above stated.

The defendant claims that it is not liable under the facts stated in the petition in this case; that the acts above quoted were passed to accomplish an entirely different purpose; that the act of 1902 was intended to and did give the state supervi-

sion over all couplers on all railroad cars and provided a penalty for each day a car was used with a coupler out of repair, and that the act of 1906 specified the kind of couplers with which all railroad vehicles should be equipped and provides a penalty for each time a car or vehicle is hauled when not so equipped, and therefore it would be liable for the penalty under the act of 1906 only in case of a failure to equip its cars as provided in that act, and that it would be liable under the act of 1902 if those couplers were out of repair or in such condition that they could not be used as provided in that act.

One of the fundamental principles of the construction of statutes is that the court shall determine and declare the intention of the Legislature in passing the act or acts in question, that statutes shall be so construed that each shall, if it can be done, be given the effect the Legislature intended it to have, and that in arriving at that intention the language used shall be given its plain, ordinary meaning.

In passing upon what appear to be conflicting statutes the Supreme Court of Oklahoma has this to say:

"It is the duty of the court to endeavor to reconcile the statutes whenever it is possible to do so in order that the legislative intent may be, as far as possible, effective, and to support the theory as fully as may be done, that as a body of revised laws adopted at the same time they are of equal force and effect, and all intended to stand with as little interference as possible, of judicial interpretation, and it is the duty of courts to endeavor to harmonize the various parts of the statute with each other. One part of the statute will not be allowed to defeat another, if, by any reasonable construction, the two may be made to stand together."

In expressing the views of the courts text-writers have this to say:

"Statutes should be construed according to the intention of the Legislature which passed the act. If the words of the statute are of themselves precise and unambiguous, then no more can be necessary than to expound these words in their natural and ordinary sense. The words themselves do in such case best declare the intention of the Legislature." *Sutherland on Statutory Construction*, Section 389, citing 177 Ill., 234.

It is also the law that:

"Laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject. And it is, therefore, but reasonable to conclude that the Legislature, in passing a statute, did not intend to interfere with or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable; and hence a repeal by implication is not favored. On the contrary the courts are bound to uphold the prior law, if the two acts may well subsist together." *Landis* v. *Landis*, 39 N. J. L., 277.

In the act of March 19, 1906, the word "equipped" seems to have occasioned a difference of opinion as to the exact meaning. The word equipped as used in the act means to fit out, to furnish for service, to provide with what is requisite for effective action. There is nothing in the statute to indicate that any other use was made of the word than the definition given by lexicographers. The act provides that it shall be unlawful to haul a car not equipped with couplers, etc. It would therefore seem clear that the intention of the Legislature was to compel railroads to equip, fit out, furnish for service cars with couplers of the character designated in the act. But counsel for the state contend that because it uses the language "coupling automatically by impact and can be uncoupled without the necessity of men going between the cars," that it provides for the operation as well as equipping of the cars. Unless a meaning is given to the word equipped other than that above stated, the part of the sentence following that word is descriptive of the character of the couplers and how they shall operate, and it seems to me that in view of the supervision that the state has assumed over the inspection of couplers, that the act of 1906 must relate solely to the equipping of the cars with couplers, and provides a penalty for hauling a car not so equipped.

It is claimed by counsel for the state that the United States courts have held that the safety appliance act passed by Congress April 1, 1896, United States Revised Statutes, Volume 27, page 532, covers the subject of couplers and that the construction given to that act should be given to the Ohio law on the same subject. The United States safety appliance act reads as follows:

Sec. 2. "That on and after the first day of January, 1896, it shall be unlawful for any such common carrier to haul, or to permit to be hauled or used on its line, any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The language of the act of 1906, of the Legislature of Ohio, was taken from the act of Congress above referred to, and if that were all that the Ohio Statutes contained on the subject of couplers I would unhesitatingly follow the decisions of the United States court on the subject. It has not been pointed out to me, and I have been unable to find any act of Congress giving the government the supervision, inspection and control over the couplers on cars used in interstate traffic, as has been assumed by the state of Ohio with reference to state traffic. Therefore the question here is the construction of the two acts of the Legislature of Ohio, and by that construction to determine whether the later act repealed the former or rendered it inoperative.

The act giving the state of Ohio supervision over couplers was passed in 1902. The act under which this suit is brought was passed in 1906. Does the act of 1906 repeal or render inoperative the act of 1902?

The general rule is that:

"When some office or function can by fair construction be assigned to both acts, and they confer different powers to be exercised for different purposes, both must stand, though they were designed to operate upon the same general subject. * * * There must be such a manifest and total repugnance that the two enactments can not stand. The earliest statute continues in force, unless the two are clearly inconsistent with and repugnant to each other. * * * Where two acts are seemingly repugnant, they should, if possible, be so construed that the latter may not operate as a repeal of the former by implication." 1 Sutherland on Statutory Construction, Section 247.

The Supreme Court of North Carolina, in passing on this question, say:

"1. The law does not favor the repeal of an older statute by a later one by mere implication.

"2.   The implication, in order to be operative must be necessary, and if it arise out of repugnancy between the two acts, the later abrogates the older only to the extent that it is inconsistent and irreconcilable with it.   A later and an older statute will if possible and reasonable to do so, be always construed together, so as to give effect not only to the distinct parts and provisions of the latter, not inconsistent with the new law, but to give effect to the older law as a whole, subject only to restrictions or modifications of its meaning, where such seems to have been the legislative purpose.   A law will not be deemed repealed because some of its provisions are repeated in a subsequent statute, except in so far as the latter plainly appears to have been intended by the Legislature as a substitute."   *Winslow* v. *Morton*, 118 N. C., 491-492.

The Supreme Court of Oregon, passing on the same question, uses the following language:

"Is there such repugnancy between the two acts   *   *   * that the two can not stand together?   If there is, according to well settled rules of construction, the last act repeals the former by implication.   It may be proper to remark in this connection that repeals by implication are not favored.   By that I understand it is the duty of the court to so construe said acts, if possible, that they shall both be operative."   *State* v. *Dupuis*, 18 Ore., 372, at 375.

Counsel for the state cite the case of *United States* v. *Chicago, Milwaukee & St. Paul R. R.*, 149 Fed., 486, syllabus 4:

"When an interstate carrier hauled cars considerably damaged by derailment so that the coupling devices were gone, 379 miles, past three or more places where repairing is done, in order to make the repairs at a larger and better equipped shop, it violated the safety appliance law."

Counsel for the state in their brief on page 5 say:

"Decisions upon this point can be multiplied, but the law is settled and the decision last quoted is so pat as to dispose of the issue."

I am inclined to agree with counsel for the state in the conclusion reached in the sentence just quoted.   It should be noted, however, that in the case on which he relies the facts stated

were that the cars were so damaged by derailment that the coupling devices were gone. Then the railroad company must have moved the cars in traffic without couplers of the kind designated in the safety appliance act. Applying the law to the facts in that case, I do not see how the court could have come to a conclusion other than it did.

The Ohio law is different in one respect from the safety appliance act passed by Congress. The Ohio law divides the subject into two branches, one of equipping its cars, and the other of keeping its couplers in repair.

The pleadings in this case, and it is agreed by counsel that they state the facts, specifically state that just prior to the hauling of the cars complained of by the state, the cars were equipped with the kind of couplers specified in the act of 1906, but they were not coupled by impact, and as I understand it they could not be uncoupled without the necessity of men going between the ends of the cars. If they had such couplers on, then either they were not used or they were out of repair, and if the two sections of the statutes of Ohio are to be given effect, one must relate to the couplers and the other to the use of the couplers when the cars are so equipped.

It seems to follow that the Ohio law with reference to state traffic is different from the act of Congress with reference to interstate traffic. To hold that the penalty provided by the act of March 19, 1906, should be collected under the facts stated in the pleadings in the case at bar, would be to hold that the act of April 1, 1902, was repealed by implication or that the passage of the act of March 19, 1906, rendered that statute inoperative.

If I am correct in the conclusion that the law is, that it is the duty of courts in construing statutes to give that construction, if it can reasonably be done, that will make effective both statutes, then I must conclude that the act of March, 1906, related exclusively to the equipping of cars with couplers, and that the act of April 1, 1902, provides a method of inspecting the cars, seeing that the couplers are in repair and a penalty for operating a car with a coupler that is out of repair or not used.

A decree will be entered accordingly.