## APPROPRIATION BY ONE MUNICIPALITY OF LAND LYING WITHIN ANOTHER MUNICIPALITY.

Common Pleas Court of Hamilton County.

CITY OF CINCINNATI V. WILLIAM ZIEGLER AND FRED SCHMUTTE.

Decided, September 1, 1914.

*Municipal Corporations—Appropriation of Property for Park Purposes —Compensation Limited to Present Value, Irrespective of Benefit from the Proposed Improvement—Land Lying in an Adjacent Municipality Taken in Enlarging Park Area.*

1. Where a municipality has acquired property by gift and purchase for park purposes, an abutting owner whose land it is sought to appropriate as an addition to the park area, is entitled to recover as compensation only the present value of his property, without regard to benefits likely to result from the proposed improvement.
2. The grant of power by the General Assembly to municipalities to appropriate property for public purposes, authorizes the appropriation of contiguous land notwithstanding it may lie within the territorial limits of an adjoining municipality.

*Wm. C. Meyer* and *E. A. Tepe,* for the motions.

*Walter M. Schoenle,* City Solicitor, and *Saul Zielonka,* Assistant City Solicitor, contra.

Heard on motion of William Ziegler for a new trial and the motions of Fred Schmutte to dismiss the proceedings and for a new trial.

GEOGHEGAN, J.

The motion of the defendant Ziegler for a new trial is based principally upon an alleged error of the court in refusing to give a special instruction to the jury to the effect that the jury might consider the fact that the property of the defendant Ziegler abutted upon other property that had been acquired by the city of Cincinnati through its park commissioners for a boulevard, and the refusal of the court to admit testimony as to its alleged enhanced value by reason of that fact.

This proceeding was one to appropriate property for park purposes. The property sought to be appropriated is situated in the northern part of Cincinnati, in the valley commonly known as Bloody Run. An extensive plan of park boulevard improvement known as the Kessler plan has been adopted by the park commissioners of the city of Cincinnati for the purpose of constructing a park boulevard across the greater portion of the northern part of the city of Cincinnati. The property of the defendant Ziegler is situated in that portion of the improvement known on the plan as Section 5. In that section and in pursuance of the adopted plan the park commissioners had by purchase and by gift acquired considerable property, and appropriation proceedings were commenced by proper legislation to acquire the property of the defendant Zeigler. The defendant Zeigler's property was used at the time of the passage of the resolution as pasture land, but it had been for a number of years platted into lots, the subdivisions being duly recorded in the office of the recorder of Hamilton county. However, there were no made streets or other improvements and certain of the lots were so platted as not to face upon any public street. A certain Mrs. Bragg, in pursuance of the plan adopted by the park commissioners, by deed of gift transferred to the city of Cincinnati a large amount of property, and the commissioners acquired by purchase certain other parcels, leaving the property of the defendants Zeigler and Schmutte as the only ones necessary to obtain in order that the proposed section of the improvement might be completed. These proceedings were started for that purpose and the defendant Zeigler claimed that inasmuch as certain of his lots which formerly had no outlet on any public street, now abutted on the property acquired by the city by gift and by purchase, that he would be entitled to recover the enhanced value of that property and complains that the court erred in refusing to submit this question of the enhanced value to the jury, or to allow evidence to show this enhancement to be presented to the jury.

The court stated in the oral argument on the motion for a new trial that it was its opinion that the value of the property

should be assessed irrespective of any benefit by reason of the proposed improvement, and that inasmuch as the acquired amount of the Bragg property and the other property by the city was in pursuance of the improvement and a part of the plan, that the defendant Zeigler could obtain no advantage by reason of the fact that his property now abutted upon this property acquired in the course of and for the same improvement.

An examination of the authorities convince the court that his first impression of the matter was the correct one.

In *Lewis on Eminent Domain*, 3d Ed., page 1329, Section 745, it is said:

"Whatever the time fixed upon with reference to which the compensation shall be estimated, the owner is entitled to the actual value of the land at that time, even though it may have been enhanced by reason of the projected improvement for which it is taken. It is said this is not really making the condemning party pay for an enhancement caused by its own work, as such enhancement does not come from the mere projection of the work, but from the exsitence of circumstances which create a demand for the work, and render it probable that such a work will sooner or later be built. In so far as the enhancement is due to such circumstances no doubt it is properly considered and allowed. But it may be doubted whether the rule should go any further. If the proposed improvement had depreciated the value of the property, it would be very unjust that the condemning party should get it at its depreciated value, *and the correct rule would seem to be that the value should be estimated irrespective of any effect produced by the proposed work. It has been held improper to consider what the property would have been worth if it could have had the benefit of the proposed improvement without being taken.*"

This rule seems to be in consonance with a very great number of accepted authorities: *May v. Boston*, 158 Mass., 21; *Vowditch v. Boston*, 164 Mass., 107; *Mowrey v. Boston*, 173 Mass., 425; *Gibson v. Norwalk*, 13 O. C. C., 428; *Shoemaker v. United States*, 147 U. S., 282; *Railroad Co. v. Coleman*, 3 Washington, 228; *In re Water Commissioners*, 3 Edwards Ch., 552; *Abbott v. Southern Pac. R. R. Co.*, 109 Cal., 282.

In *May* v. *Boston, supra*, the court in its opinion at page 29, uses language peculiarly applicable to the matter here in hand:

"It was evidently the purpose of the Legislature not to permit landowners to recover damages for the land taken for a public use at a value enhanced by a public improvement which owes its existence to the change of use of the very land which is to be paid for. Land taken is to be paid for at its value. Its value is to be determined by a consideration of the uses to which it is adapted. Its market value can not legitimately be founded on anything else. It may have a market value largely dependent on a probable future demand for it; but that which is relied on ultimately to create the demand is the valuable uses to which it can be put. Whenever there is an expectation of a public improvement, the market price of land in the vicinity is likely to advance, in anticipation of the more valuable uses to which the land can be put when the improvement is made. Its real value for use is not increased until the change in its surroundings comes. If the unexpected improvement involves the taking of land by the right of eminent domain, the value of the land taken will never be enhanced by the improvement, for the taking precludes the possibility of ever using it under improved conditions. In that respect it stands differently from other land in the vicinity which is not taken. Whenever there is a project for laying out or widening a way, or taking land for any other public use which is expected to increase the value of real estate in the neighborhood, if the market price of land in the vicinity rises in anticipation of the change, the statute very justly says that the land taken shall not be paid for at the increased price. If it is known from the beginning exactly what land will be taken, it must also be known that that particular land can never be made more valuable by the improvements, since it can never be used by its owner under the improved conditions. If the plan is general, and it is not known exactly what land will be needed by the public, but only that some land will, whenever the plan takes definite form, and the location is fixed, it is known that the land to be taken has not received, and never can receive, any benefit from the improvements. There is no injustice in saying that such land shall not entitle its owner to be paid out of the public treasury at a rate determined, not by its value for use, but by a prospective and speculative value of land in the vicinity, derived from an expectation of the benefit to come from the public use for which this is to be taken. One holding or buying or selling land in a neighborhood where the market price has risen in anticipation of the public improve-

ments which will involve the taking of a part of it for a public use, is bound to know that under the statute the land which will be taken for such a use can be paid for only at its value, unaffected by the improvements. *Benton* v. *Brookline,* 151 Mass.. 250. The constitutionality of legislation of this kind was established in *Dorgan* v. *Boston,* 12 Allen, 223, 231.''

This line of reasoning may well be applied to our statute providing for the appropriation of property for boulevard purposes. It certainly could not be within the purpose of the law that property owners either through stubbornness or avarice could hold out until the city had acquired other lands by gift or by purchase and then by compelling the city to enter into proceedings to appropriate their property, to recover for whatever additional value might be added to their lands by reason of the fact that the city had acquired for the same improvement lands adjacent thereto. No constitutional rights are derogated from by this construction. The property owner is still allowed the full value of his land as it stood at and prior to the time of the proposed improvement. Nor do I think that this construction is out of harmony with the rule laid down by Judge Ranney in *Giesy* v. *Railroad Company,* 4 Ohio St., 308, at page 332:

''The jury are not required to consider how much, nor permitted to make any use of the fact that it may have increased in value by the proposal or construction of the work for which it is taken.''

This has long been the rule in Ohio, and it would seem to be an injustice to the public that a property owner might hold out while other lands are being acquired by gift or by purchase and then recover the enhanced value to his land by reason of the fact that it abutted on those lands which had thus been acquired by the public for the same general improvement.

The motion for a new trial, therefore, as to Ziegler will be overruled.

*Second.* Another and different question is presented by the motion to dismiss on the part of the defendant, Fred Schmutte. The evidence shows that Schmutte's property lies entirely within the corporate limits of the city of Norwood, a municipality

immediately adjoining and contiguous to the city of Cincinnati. The property, however, lies exactly within the lines of the proposed improvement and is contiguous to the city of Cincinnati Counsel for Schmutte based his right to have the proceedings dismissed, entirely upon the theory that it can not be presumed to have been within the legislative intent that the city of Cincinnati should have the power to appropriate property for park purposes when that property lies within the corporate limits of another municipality. He admits that the statutes pertaining to the subject authorize the appropriation of property for park purposes within the limits of the appropriating municipality, or the territory contiguous to such municipality (Sections 3677, 3678, 4060, General Code). But he denies that the words in the statute, "or the territory contiguous to such city" (Section 4060, General Code), and, "the corporation may, when reasonably necessary, acquire property outside the limits of the corporation" (Section 3678, G. C.), show a legislative intent to authorize a municipality to acquire property by appropriation proceedings which lies wholly within the corporate limits of another municipality having itself the same rights of eminent domain.

When this proposition was submitted to me upon the oral argument I was strongly impressed with what then appeared to me to be the apparent correctness of this construction of the statute, but an examination of the authorities, however, convince me that this construction is, in view of the language of the statutes referred to above, entirely erroneous.

In *Dillon on Municipal Corporations,* 5th Ed., Vol. 3., Section 1028, it is said:

"The power of the Legislature to authorize a municipal corporation to acquire *lands beyond the municipal limits* and for that purpose to exercise the power of eminent domain can not be disputed. It has long been recognized to exist where the use for which the property is taken is a proper and reasonable public use. It has been said that power to condemn lands beyond the municipal limits must be *expressly conferred* upon the municipality. But what is express power is largely a matter of construction. In construing the authority conferred upon

municipalities it has been held that if a city is authorized to engage in a public improvement beyond its limits and to acquire land therefor, a general power of eminent domain conferred upon it to acquire land for its corporate purposes may be exercised to effectuate the improvement beyond the city limits.''

Now certainly it can not be denied that the Legislature of this state has conferred upon municipalities in general terms and upon the board of park commissioners specifically, power to acquire land for park and boulevard purposes in territory contiguous to and beyond the limits of the municipality. There does not seem to be any reason, therefore, to narrow the construction of these statutes so that the words, ''beyond the limits of the city,'' and ''territory contiguous to such city'' will apply only to such territory contiguous to a municipality as is not included within the corporate limits of another municipality.

This precise question was raised in the case entitled ''*In the Matter of the Application of the Mayor, Alderman and Commonalty of the City of New York to Acquire Title to Certain Lands for Public Parks, etc.,* 99 N. Y., 569, and the court there in a well considered opinion upheld the power of the municipality to acquire land by appropriation proceedings beyond the corporate limits of the city of New York, and in so holding relied largely upon a previous decision of the same court in the case of *Matter of Lands in the Town of Flatbush,* 60 N. Y., 398, wherein the city of Brooklyn was upheld in its attempt to appropriate lands for park purposes both within its corporate limits and within the limits of the town of Flatbush and the town of Newlots.

In *State v. King County Superior Court,* 35 Washington, 303, the power to acquire lands beyond the corporate limits of the state for the purpose of establishing ferries was upheld, and no exception seems to have been made to the rule with reference to whether or not the land sought to be acquired was within or without the corporate limits of another municipality. This same principle was upheld in *Helen v. Grayville,* 224 Ill., 274; *Warner v. Gunnison,* 2 Col. App., 430; *Coldwater v. Tucker,* 36 Mich., 474; *McBean v. Fresno,* 112 Cal., 159; *Land & Mining Co. v. Billings,* 111 Fed., 972.

It would seem that in view of the above authorities the distinction sought to be made by counsel for defendant is not tenable. It certainly would be entirely within the right of the Legislature to grant to the city of Cincinnati the right to condemn property within the corporate limits of the city of Norwood in specific terms; the only limitation being that the appropriation should be for some public use or purpose. If the Legislature undoubtedly has the power to grant the right in specific terms, it can not be said that the mere fact that the Legislature has used general terms excludes any legislative intent to grant what it might have granted in specific terms.

The property of Schmutte lies contiguous to the city of Cincinnati and is within the lines of the proposed improvement. The improvement is one that has been authorized by statute. The defendant Schmutte had his day in court and the question of the assessment of the compensation to be paid to him was left to the jury. The court had jurisdiction both over the subject-matter and over his person, and all his constitutional rights in the matter were preserved.

Therefore, his motion to dismiss as well as his motion for a new trial will be overruled.